R. Stockton RUSH, III,
Plaintiff-Appellee,

v.

OPPENHEIMER & CO., and Scott
Seskis, Defendants-Appellants.

No. 22, Docket No. 85–7335.

United States Court of Appeals,
Second Circuit.

Argued Sept. 24, 1985.

Decided Dec. 20, 1985.

Martin R. Gold, New York City (Gold, Farrell & Marks, Robert P. Mulvey, Beth M. Schillinger, of counsel), for Defendants-Appellants Oppenheimer & Co., Inc. and Scott Seskis.

Christopher Lovell, New York City (Lovell & Stewart, Victor E. Stewart, of counsel), for Plaintiff-Appellee R. Stockton Rush, III.

Before MANSFIELD, PIERCE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Claiming unauthorized trading in his brokerage investment account, R. Stockton Rush, III brought this action against Oppenheimer & Co., Inc. and Scott Seskis, in which he alleged federal securities, RICO, and pendent common law claims. After approximately eight months of pretrial proceedings in the district court, defendants moved to sever the common law claim and to compel its arbitration. The United States District Court for the Southern District of New York, Robert W. Sweet, Judge, denied defendants' motion, 606 F.Supp. 300, holding that since Rush had been prejudiced by defendants' participation in the district court action, defendants had waived their right to compel arbitration. We disagree with the district

court that the standard for waiver of the right to compel arbitration has been satisfied here, so we reverse and remand for further proceedings.

## BACKGROUND

On November 30, 1981, R. Stockton Rush, III opened an options trading account at Oppenheimer with Scott Seskis, a registered representative of Oppenheimer. The agreement signed by Rush included an arbitration clause by which Rush agreed that any controversy between the parties would be settled by arbitration according to the rules of either the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc., as Rush elected. Despite the arbitration clause, Rush commenced this action in the district court for damages resulting from the alleged improper and excessive trading in his account.

Rush alleged three claims. First, he charged "churning" of the account in violation of sections 10(b) and 20 of the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78j(b), 78t. Second, he sought compensatory damages based on New York's common law principles of breach of fiduciary duty. In addition, under a gross fraud allegation, Rush charged that defendants' breach of their fiduciary duty to him involved a high degree of moral turpitude that entitled him to punitive damages under New York law. Third, Rush alleged a RICO violation, contending that defendants' methods of dealing with plaintiff and other members of the investing public constituted racketeering activity under 18 U.S.C. § 1961(1)(D).

Defendants moved on June 25, 1984, to dismiss the complaint for failure to plead fraud with particularity, in violation of Fed. R.Civ.P. 9(b), and for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). Rush then prepared an amended complaint, and on the same day that he served it, the district judge partially granted defendants' motion by (1) dismissing the punitive damages element of Rush's common law claim, and (2) dismissing the RICO claim on the basis of

this court's holding in *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *rev'd,* — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

Rush moved for reargument of the punitive damages issue. While that motion was *sub judice,* defendants answered the amended complaint on August 31, 1984, alleging denials and thirteen affirmative defenses; however, they did not yet assert the agreement to arbitrate as a defense. On November 9, 1984, Judge Sweet vacated his prior order and, applying a different legal standard on the availability of punitive damages in fraud cases, reinstated the punitive damages element of the plaintiff's common law claim.

Approximately six weeks later defendants moved to sever the common law claim and to compel that it be arbitrated. Defendants contend that they had not sought arbitration earlier because the common law punitive damages claim, which could be considered only in the district court, had been dismissed and, thus, their primary motivation for demanding arbitration had been negated, albeit temporarily.

Rush initially opposed the motion to compel arbitration primarily on the ground of the intertwining doctrine, but when the Supreme Court rejected that doctrine in *Dean Witter Reynolds Inc. v. Byrd,* — U.S. ——, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985), Rush shifted his attention to two other arguments: that the defendants had waived their right to compel arbitration by participating in the district court proceedings, and that the agreement to arbitrate had been fraudulently induced.

The district court agreed that defendants had waived their right to compel arbitration. Judge Sweet emphasized that defendants had not urged severance and arbitration of the common law claim either in their motion to dismiss Rush's complaint or in their answer to Rush's amended complaint. Further, noting that prejudice to the other party is the touchstone in determining waiver of the right to compel arbitration, Judge Sweet held that such prejudice to Rush had resulted 1) from defend-

ants' participation in the litigation without sooner raising the arbitration issue, 2) from unnecessary cost and delay to Rush if arbitration were to be compelled at that point, and 3) from the fact that now that defendants had received an adverse decision on the punitive damage issue they were seeking a second chance to litigate the same claim in a new forum where punitive damages would not be allowed. Because he found waiver of the right to compel arbitration, Judge Sweet did not reach the question of whether the arbitration clause had been fraudulently induced, and that issue is not before this court.

## DISCUSSION

Where, as here, the concern is whether the undisputed facts of defendants' pretrial participation in the litigation satisfy the standard for waiver, the question of waiver of arbitration is one of law, *see Southwest Industrial Import & Export, Inc. v. Wilmod Co.*, 524 F.2d 468, 469–70 & n. 3 (5th Cir.1975), and is fully reviewable on appeal free from the clearly erroneous standard of Fed.R.Civ.P. 52(a) applicable to factual findings by the district court.

■ Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring arbitration for dispute resolution. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see also Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). Clearly, the policies underlying the federal arbitration act favor enforcement of agreements to arbitrate disputes. *See In re Conticommodity Services Inc.*, 613

F.2d 1222, 1224–25 (2d Cir.1980) (quoting 9 U.S.C. § 4).

■ Given this dominant federal policy favoring arbitration, waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated. *Demsey & Associates, Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1018 (2d Cir.1972); *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir.1968). "Waiver * * * is not to be lightly inferred, and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party * * * cannot carry the day." *Id.* (citation omitted); *see also Weight Watchers of Quebec Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1057, 1058–59 (E.D.N.Y. 1975).

■ Nevertheless, we have recently reaffirmed "that the litigation of substantial issues going to the merits may constitute a waiver of arbitration", *Sweater Bee By Banff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457, 461 (2d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985), and in reliance upon this principle Judge Sweet below reasoned that "Oppenheimer's extensive involvement over the course of eight months in the litigation, including taking rather extensive discovery, bringing a motion to dismiss, and posing thirteen affirmative defenses to the amended complaint, all without raising the right to arbitration, constitutes prejudice to Rush and a waiver of the right to arbitrate." We disagree, however, because on this record none of the factors cited by the district court, whether viewed individually or in combination, warrants a finding of waiver of arbitration.

### A. Expense and Delay

It is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate, for in addition, prejudice to Rush must be demonstrated. *See Carcich*, 389 F.2d at 696. The Supreme Court, when it rejected the

intertwining doctrine, noted that: "The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims." *Dean Witter Reynolds Inc. v. Byrd,* — U.S. ——, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

Noting that prejudice is determinative of waiver, the district judge wrote that prejudice has been found "where a party has caused substantial expense and loss of time by continuing litigation instead of demanding arbitration * * *." To support this statement, the district judge cited *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir.1972), in which this court found prejudice due to the expense and delay already incurred in the litigation. The judicial activity in *Demsey,* however, included a full trial on the merits and was, therefore, dramatically different from the pretrial incidents we address here. No similar prejudice in terms of either expense or delay can be said to have occurred in the instant case.

Moreover, the instant case is distinguishable from *Bengiovi v. Prudential-Bache Securities, Inc.,* — F.2d — [Current] Fed.Sec.L.Rep. (CCH) ¶ 92,012 (D.D.C. April 25, 1985). There, a customer charged her broker-dealers with securities fraud and common law breach of fiduciary duty in the handling of her investments. After answering, defendants participated in several discovery procedures and, ultimately, moved for partial summary judgment. Shortly after the Supreme Court's decision in *Byrd,* 105 S.Ct. at 1238, one defendant moved to compel arbitration. The district court denied the motion, holding that the plaintiff had been prejudiced by defendant's delay in seeking arbitration.

The defendant in *Bengiovi,* however, had already put plaintiff to the expense of having to defend a motion for partial summary judgment, and it had moved for arbitration eight and one-half months after answering

the complaint and only four and one-half weeks before trial—much later in the litigation than defendants' motion here. Moreover, the delay in that case was in no way attributable, as here, to the district judge's change of heart on the important issue of punitive damages. Thus, the expense and delay in the present case fall well short of what the *Bengiovi* court found sufficient to constitute a waiver of arbitration.

**B. *Motion to Dismiss***

■ Rather than immediately seeking arbitration in response to Rush's complaint, defendants moved to dismiss. Such a motion alone, however, does not waive the right to arbitrate. *Sweater Bee,* 754 F.2d at 463. Significantly, the *Sweater Bee* panel noted:

> [W]here * * * a plaintiff files an intricate complaint, setting forth numerous claims outside the scope of, though partially related to, the arbitrable claims, he should not be altogether surprised that a defendant takes the protective step of filing a motion to dismiss, specifically permitted by Fed.R.Civ.P. 12(b) to be filed before answer.

*Id.*

**C. *Participation in Discovery***

Similarly, defendants' participation in pretrial discovery did not preclude them from demanding arbitration. In addition to his arbitrable state common law claims of breach of fiduciary duty Rush also alleged federal securities claims that defendants "reasonably perceived" to be nonarbitrable. *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 642 (7th Cir.1981); *see Wilko v. Swan,* 346 U.S. 427, 438, 74 S.Ct. 182, 188, 98 L.Ed. 168 (1953); *see also Allegaert v. Perot,* 548 F.2d 432, 437–38 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977); *Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1103 (2d Cir.1970); *Starkman v. Seroussi,* 377 F.Supp. 518, 522 (S.D.N.Y.1974); *cf. Dean Witter Reynolds Inc. v. Byrd,* — U.S. ——, 105 S.Ct. 1238, 1240 n. 1, 84 L.Ed.2d 158 (1985) (discussing without deciding the

arbitrability of § 10(b) and Rule 10b–5 claims). "[N]o waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims." *Dickinson*, 661 F.2d at 642. Since Rush is unable to point to any specific discovery conducted by defendants that was not relevant to the securities claims, he cannot establish that prejudice in the arbitration would result from that discovery. *See Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, [1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 91,650 at 99,294 (D.Minn. August 6, 1984).

**D. *Answer***

■ Nor does defendants' service of an answer that contained thirteen affirmative defenses but failed to raise the agreement to arbitrate, constitute a waiver of arbitration. Absent a demonstration of prejudice by Rush, the bare fact that the defendants filed an answer is inadequate by itself to support a claim of waiver of arbitration. *See ITT World Communications, Inc. v. Communications Workers of America, AFL–CIO*, 422 F.2d 77, 82 (2d Cir.1970).

In *Kulukundis Shipping Co., S/A v. Amtorg Trading Corp.*, 126 F.2d 978, 980 (2d Cir.1942), the respondent in a suit upon a charter party argued that the district judge should have allowed it to amend its answer approximately nine months after its original answer—which pleaded that no contract had ever been made—to include a demand that the libellant must first proceed to arbitration. This court held that the respondent should have been allowed to amend its answer to raise the arbitration defense, 126 F.2d at 988 n. 33, and could not be said to have waived that right since "no important intervening steps had been taken in the suit and no one had been affected by the delay", *id.* at 989.

Here, too, defendants' decision to answer Rush's amended complaint does not justify a finding of waiver, because no important steps were taken by either party following the filing of that pleading. The sole significant occurrence between the time of defendants' answer and the time defendants moved to compel arbitration was the reinstatement by Judge Sweet of Rush's common law claim for punitive damages.

Similarly, and for the same reason, defendants' failure to raise the agreement to arbitrate as an affirmative defense when they did file their answer does not mandate a waiver of the right to arbitrate. Rush cannot demonstrate any prejudice resulting from defendants' decision to seek arbitration by a later motion rather than in their answer, because of the absence of any important intervening steps. *See China Union Lines Ltd. v. American Marine Underwriters, Inc.*, 458 F.Supp. 132, 136 (S.D. N.Y.1978).

Thus, none of the individual aspects of the pretrial proceedings conducted by the defendants—the eight-month delay, the motion to dismiss, the conduct of discovery, and the answer—prejudiced Rush in any sense that would support a conclusion of waiver by defendants of their contractual right to arbitrate. Neither does the combination of defendants' activities, taken as a whole, justify such a conclusion.

Defendants' proffered reason for choosing not to seek arbitration earlier in the proceedings was the district judge's dismissal of the punitive damages part of the pendent common law claim. "But for" that dismissal they would have demanded arbitration sooner because punitive damages would not be available in the arbitration. With that dismissal they saw no need for arbitration, for with punitive damages out of the case, defendants believed that they were as well off in district court as they would have been in arbitration, since Rush would have been precluded from punitive damages in both forums. Therefore, approximately two and one-half months of the delay can reasonably be attributed to the district judge's decision to vacate his earlier order dismissing the claim for punitive damages. And, once that change in decision was made, defendants promptly made their motion to sever the common law claim and to compel that it be arbitrated. At oral argument defendants also asserted that they did not seek arbitration at the

outset because until the Supreme Court decided the *Byrd* case, the intertwining doctrine was still in the picture as a formidable obstacle to arbitration.

The district court also based its finding of prejudice to Rush on the ground that "Oppenheimer has sought to shift the forum for resolution of the state claims only after this court reinstated the punitive damages aspect of those claims. Having litigated an issue and having obtained a decision adverse to its interest on a critical issue of its exposure to damages, Oppenheimer cannot now shift the forum of this dispute without causing prejudice to Rush." In this view the district court erred.

This is not an instance in which "a party sensing an adverse court decision [is, in effect, allowed] a second chance in another forum." *Jones Motor Co. v. Chauffeurs, Teamsters and Helpers Local Union,* 671 F.2d 38, 43 (1st Cir.), *cert. denied,* 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1982). Rather, defendants had, consistent with their right to demand arbitration, first moved to dismiss Rush's complaint, *see Sweater Bee,* 754 F.2d at 466, and had received a favorable decision to the extent that the punitive damages element of the common law claim was dismissed. Only after the district judge had reversed himself on this point by reinstating the punitive damages claim did defendants seek arbitration. Since plaintiff would not have been prejudiced by a later motion to arbitrate had defendants' motion to dismiss been completely denied, *see id.,* their motion to compel arbitration following reversal on reargument of their initial, partial success cannot be said to have prejudiced Rush either.

Lastly, prejudice, in the sense required for a waiver of arbitration, does not spring from the fact that Rush will be precluded from recovering punitive damages if he is required to resolve his dispute in the arbitration forum in which he initially contracted to resolve all such disputes. As the *Sweater Bee* panel observed:

Nor are we persuaded by Sweater Bee's argument that arbitration would be prejudicial because an award of punitive damages would be foreclosed that might otherwise be forthcoming from the district court; in at least this respect, Sweater Bee is no worse off proceeding now to arbitration than had Manhattan moved for arbitration immediately after being served with the amended complaint.

754 F.2d at 463.

As indicated herein we think that the parties' agreement requires arbitration of Rush's common law claim and that defendants' right to arbitrate has not been waived. The district court, however, did not reach the alternative issue advanced by plaintiff below, namely, whether the agreement itself was induced by fraud, and before ordering arbitration, the district court must first dispose of that issue, a matter on which we express no opinion because it is not properly before us.

Additionally, in remanding defendants' motion to the district court to sever and compel arbitration of the common law claim, we note that the aspect of that motion seeking to have the arbitration stayed pending resolution of the federal securities claims is also not properly before us because it must be addressed in the first instance by the district court. In deciding this question the district court should consider the decision in *Byrd,* wherein the Court noted that "it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims", 105 S.Ct. at 1243, that the preclusive effect of arbitration should be considered in light of the federal interests to be protected, *id.* at 1243–44, and that since the preclusion doctrine adequately serves to protect federal interests, "it follows that neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is *required* in order to assure that a precedent arbitration does not impede a subsequent federal-court action", *id.* at 1243 (emphasis in original).

**CONCLUSION**

Although granting defendants' demand for arbitration at this point may be sanctioning a less efficient means of resolving this dispute, we reemphasize that neither efficiency nor judicial economy is the primary goal behind the arbitration act. Indeed, we have recently stated that a district court may not, on considerations of judicial economy, refuse to stay the proceedings before it in favor of arbitration. *See Seguros Banvanez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 862 (2d Cir.1985). "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute." *Byrd,* 105 S.Ct. at 1242–43.

Reversed and remanded to the district court for further proceedings.