## INTERSTATE SECURITIES CORP., Plaintiff,

v.

## Jeffrey D. SIEGEL and Helen Siegel, Defendants,

v.

## Glen SHIPWAY, Charles Cavalano and Anthony Guiffredi, Counterclaim Defendants.

### No. 86 CV 8864 (RJD).

United States District Court, S.D. New York.

Jan. 5, 1988.

---

Cadwalader, Wickersham & Taft, New York City, for plaintiff.

Louis B. Youmans, Shrewsbury, N.J., for defendants.

## MEMORANDUM ORDER

DARONCO, District Judge.

Plaintiff, Interstate Securities Corp. ("Interstate"), a member of the American Stock Exchange ("AMEX"), brought this action alleging common law fraud, breach of contract and payments due on promissory notes, in connection with transactions executed by defendant Jeffrey Siegel through the AMEX, of which he is a member. Further, plaintiff alleges defendant, Helen Siegel, who is not a member of AMEX, is liable on her unconditional guarantee of payment on the promissory notes signed by her husband, defendant Jeffrey Siegel. In their Answer, defendants Siegel assert 16 affirmative defenses, and interpose six counterclaims alleging breaches of 3 contracts, interference with contractual relations and defamation.

The plaintiff moved for summary judgment, Fed.R.Civ.P. 56, as to its claims, and for the dismissal of the defendants' affirmative defenses and counterclaims, as well as an award of attorneys' fees pursuant to Fed.R.Civ.P. 11. In response, the defendants seek "dismissal" of the entire action claiming it is subject to arbitration. Further, the defendants claim there are genuine issues of material facts thereby rendering summary judgment inappropriate. The defendants also seek sanctions pursuant to Rule 11. The Court notes that a Motion to compel arbitration, if granted, does not result in a dismissal of the action. Rather, the action is stayed pending arbitration. 9 U.S.C. § 3. Accordingly, defendants' Motion will be treated as a Motion to compel arbitration pursuant to the Federal Arbitration Act and not as a Motion to Dismiss.

The facts necessary for disposition of this Motion are that defendant Jeffrey Siegel leased a seat on the AMEX from Interstate and agreed to execute Interstate's options on the AMEX, in addition to those of his other customers. In December 1985, Mr. Siegel improperly placed transactions in Interstate's account and, as a result, Interstate suffered a loss of $109,675.27. It is not disputed that Mr. Siegel lacked authority to place these transactions in Interstate's account. He promised compensation to Interstate for the resulting losses and consequently, signed a promissory note (the "December note") reflecting his obligation to repay Interstate the amount of $109,675.27, plus reasonable costs of collec-

tion, including attorneys' fees. The terms of the note also authorized Interstate to apply any sums due Jeffrey Siegel to reduce the balance of the note. His wife, defendant Helen Siegel, guaranteed the promissory note. The December note called for minimum monthly payments of $5,000.00, beginning January 15, 1986, and Mr. Siegel made 3 payments, totaling $17,250.00. His last payment was on March 15, 1986.

In April 1986, transactions again were improperly placed in Interstate's account, and as a result, it suffered a loss, estimated initially at $270,700.00. Defendant Jeffrey Siegel signed another promissory note (the "first April" note) in the amount of $270,700.00, allegedly to compensate Interstate for the loss created by Mr. Siegel. In addition, he signed agreements terminating his seat lease and requirements contracts with Interstate.

The "first April" note was signed by Helen Siegel as guarantor. Later the same day, Interstate determined the amount of $270,700.00 to be incorrect. Consequently, a second note in the amount of $250,825.00, plus reasonable costs of collection, including attorneys' fees, was executed. Both April notes also authorized Interstate to apply any sums due Jeffrey Siegel to reduce the balance of the note. For reasons not made clear in the moving papers, the second note was not executed by Helen Siegel as guarantor. Interstate states its claims relate only to the "second April" note, not to the "first April" note, which is included only because it, and not the "second April" note, was executed by Helen Siegel as guarantor. Both April notes called for payment to be tendered in full by April 30, 1986. No payments were ever received on either April note.

Following the termination of Jeffrey Siegel as Interstate's AMEX floor broker, Interstate offset $23,722.76 in commissions against the December note, thereby reducing the remaining balance to $68,702.51. Plaintiff Interstate instituted the instant action after defendants failed to respond to demands for payment of the December and April notes.

## Discussion

■ Article VIII, Section 1 of the AMEX constitution provides that members shall arbitrate all controversies arising in connection with their business, and controversies between members and their customers shall be arbitrated as required by any customer's agreement or, in the absence of a written agreement, if the customer chooses to arbitrate. The defendants contend that the AMEX constitution governs the instant transactions and claims. Accordingly, the defendants seek to have the entire matter submitted for arbitration, claiming they have not waived their right to compel arbitration.

■ Any doubt concerning the scope of arbitrable issues, construction of the contract language, or an allegation of waiver, is to be construed in favor of arbitration. *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 [1983]). With two exceptions, the plaintiff does not allege that the transactions and claims fall outside the ambit of the AMEX constitution. Plaintiff asserts that some of the counterclaims are not subject to arbitration (Plaintiff's Reply Memorandum of Law at 25), but does not identify them or explain why they are not arbitrable. In a letter to the Court dated November 13, 1987, the plaintiff states that those claims involving Helen Siegel are not arbitrable, but fails to articulate the basis for that statement. We cannot agree with these conclusory statements. *Axelrod & Co. v. Kordich, Victor & Neufeld*, 451 F.2d 838 (2d Cir.1971) (non-members can enforce arbitration against members); *Rodriguez Font v. Paine Webber Incorp.*, 649 F.Supp. 462 (D.P.R.1986) (the right to arbitrate cannot be destroyed by naming defendants who are not a party to an arbitration agreement, as the utility of such agreements would be destroyed).

■ In recognition of the dominant federal policy favoring arbitration, waiver is not to be easily inferred, and may be found only when prejudice to the other party is

shown. *Rush,* 779 F.2d at 887. Thus, a waiver was found where there had been a full trial, *id.* at 888 (citing *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 [2d Cir.1972]), where defendants sought arbitration after having put the plaintiff to the expense of defending a Motion for partial summary judgment, *id.* (citing *Bengiovi v. Prudential–Bache Securities, Inc.,* Fed.Sec.L.Rep. [CCH] ¶ 92,012 [April 25, 1985] [Available on WESTLAW, 1985 WL 2143]), and after a defendant voluntarily withdrew a Motion to compel arbitration and then reasserted it after the filing of an Amended Complaint, *Gilmore v. Shearson American Express, Inc.,* 811 F.2d 108 (2d Cir.1987). But mere expense and delay, participation in discovery, service of a Motion to Dismiss, and service of an Answer containing affirmative defenses, none of which raise the agreement to arbitrate, are insufficient to compel a waiver of arbitration. *Rush,* 779 F.2d at 887–89.

Plaintiff alleges that defendants disingenuously participated in the litigation through discovery and service of plaintiff's Motion for summary judgment, having earlier asserted affirmative defenses and interposed counterclaims, all the while intending to seek arbitration. However, the standard as set forth in *Rush* is clear—absent a showing of prejudice, no waiver of the right to arbitrate can be found. Other than the expense and delay of conducting discovery, plaintiff Interstate does not allege, much less demonstrate, any prejudice.

The defendants' pre-trial activities, viewed singularly or in combination, are insufficient to justify a conclusion of waiver. *Rush,* 779 F.2d at 889. Accordingly, the plaintiff's Motion for summary judgment and the Cross–Motions for Rule 11 sanctions are denied. The action is stayed pending arbitration of the entire matter.

SO ORDERED.