**Patricia F. SMITH and Jennifer F. Collins, Conservators of the Estate and Person of Ruth J. Robbins, Plaintiffs,**

v.

**Dimitri PETROU and Shearson/American Express Inc., Defendants.**

No. 86 Civ. 844 (WCC).

United States District Court, S.D. New York.

Feb. 10, 1989.

Brashich and Finley, New York City, for plaintiffs; Deyan Ranko Brashich, of counsel.

Thomas E. Hommel, Jeffrey L. Friedman, Shearson Lehman Bros. Inc., Office of Gen. Counsel, New York City, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

### PROCEDURAL HISTORY

Plaintiffs (Ruth J. Robbins, by her conservatrices and nieces, Patricia F. Smith and Jennifer F. Collins) originally instituted this action against defendants Otis Bradley, Dimitri Petrou, and Shearson/American Express. Count One of plaintiffs' complaint alleged that Bradley breached his fiduciary duty to Robbins by investing in speculative securities in disregard of her mental, physical, and financial condition, and that Petrou and Shearson "aided and abetted" Bradley's breach. Count Two alleged that defendants engaged in fraudulent conduct by churning Robbins' securities account at Shearson in violation of Section 10(b) of the Securities Exchange Act of 1934 and the rules promulgated thereunder. Count Three alleged that defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (1982) through a pattern of violations of the federal securities laws.

On April 30, 1986, defendants Petrou and Shearson filed a motion requesting either (1) summary judgment under Rule 56, Fed. R.Civ.P., or (2) dismissal of the RICO claim under Rule 12(b)(6), Fed.R.Civ.P., and resolution of the remaining claims by arbitration, as mandated by an arbitration clause contained in a Third Party Discretionary Authorization and Customer's Agreement

(the Agreement) signed by Robbins on March 25, 1981.

The basis for the summary judgment motion was a provision in the Agreement providing that Robbins would hold Petrou and Shearson harmless from any losses in her account in exchange for Petrou's and Shearson's acceptance of Robbins' instruction that Bradley control all the trading in the account.

In an opinion dated December 3, 1986, the Court granted defendants' motion to dismiss the RICO claim. The motion for summary judgment, or, in the alternative, arbitration, was denied on the ground that there existed a material issue of fact about the validity of the Agreement (including the exculpatory and arbitration clauses), based on questions about Robbins' mental capacity when she executed those documents.

On January 26, 1987, the original trial date, counsel for plaintiffs agreed before the Court to discontinue with prejudice the claims asserted in the complaint against Bradley along with the "aiding and abetting" claim against Petrou and Shearson. Trial of the remaining claims was set for October 13, 1987.

In the interim, counsel for plaintiffs advised the Court and defendants that Robbins had died on March 15, 1987. At a conference held on April 13, 1987, the Court gave plaintiffs permission to file a motion to compel arbitration and to substitute Howard C. Carr (the executor) as plaintiff. In addition, the Court gave defendants Petrou and Shearson permission to file a cross-motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. These cross-motions are now before the Court.

## DISCUSSION

### I. Arbitration

Defendants contend that plaintiffs expressly waived their right to arbitration when they successfully resisted defendants' original motion to compel arbitration. In other words, defendants argue that plaintiffs should not be allowed to change their minds at this stage in the litigation and send the case to an arbitrator after having previously prevented the case from going to arbitration. For the reasons articulated below, plaintiffs' cross-motion for arbitration is denied.

If it were ambiguous whether plaintiff had actually waived arbitration, the Court would apply the analysis articulated in *Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir.1985), where the Second Circuit held, "[g]iven this dominant federal policy favoring arbitration, waiver of the right to compel arbitration may be found only when prejudice to the other party is demonstrated." *Id.* at 887.

In the current situation, however, plaintiff executed an express waiver by arguing and winning a motion opposing arbitration. The Second Circuit has held *Rush* inapplicable to such a situation by stating the principle that "a party may not freely take inconsistent positions in a law suit and simply ignore the effect of a prior filed document." *Gilmore v. Shearson/American Express Inc.*, 811 F.2d 108, 113 (2d Cir. 1987).

Plaintiffs claim that their original opposition to arbitration should not be viewed as a waiver because it was based upon the belief that their securities claims were not arbitrable. Plaintiff asserts that those claims are now arbitrable under the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). It is true that *McMahon* held that claims under § 10(b) of the Securities Exchange Act are arbitrable. However, plaintiffs' only ground for opposing arbitration had nothing to do with the arbitrability of their § 10(b) claims. On the contrary, the only reason proffered by plaintiffs for opposing arbitration was a factual assertion that Mrs. Robbins lacked the mental capacity to enter the Agreement (containing the arbitration clause) because she was senile at the time she signed it. Thus, the legal issue facing the Supreme Court in *McMahon* never played a role in either plaintiff's argument or the Court's decision on the earlier motion, and the Supreme Court's

holding in *McMahon* is irrelevant to the motion at hand.

The Second Circuit has made it plain that it subscribes to a "policy against permitting a party to play 'fast and loose' with the courts." *Gilmore v. Shearson/American Express Inc.*, 811 F.2d at 113. Plaintiffs expressly waived arbitration by opposing the first motion, and cannot now obtain arbitration by a new motion based on a change in the law which is unrelated to their asserted basis for the previous opposition.

*II. Summary Judgment*

Defendants maintain that they are entitled to summary judgment, pursuant to Rule 56, Fed.R.Civ.P., dismissing plaintiffs' claims against Petrou and Shearson under § 10(b) and Rule 10b-5.

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact." Fed.R. Civ.P. 56(c); *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 400 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must establish that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356. "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight* 804 F.2d at 11. The inquiry under a motion for summary judgment is thus the same as that under a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986).

Plaintiffs have dropped their claim against Bradley based on the allegation that he, acting as investment adviser to Mrs. Robbins, churned her account in order to generate substantial commissions for his aging friend and business associate Petrou.[1] However, plaintiffs retain the claim in Count 1 of their complaint that Petrou and Shearson were aware of and participated in this scheme to defraud Mrs. Robbins, and thereby violated § 10(b) of the 1934 Act and Rule 10b-5. In Count 2, plaintiffs further claim that Petrou and Shearson churned Mrs. Robbins' account, in violation of § 10(b) and Rule 10b-5.

The Court denies summary judgment with respect to plaintiffs' allegation in Count 1 of a scheme to defraud under § 10(b) and Rule 10b-5. Rule 10b-5 expressly prohibits "any person ... [t]o employ any device, scheme, or artifice to defraud ... [or] ... [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR § 240.10b-5 (1979).

> The essential elements of a claim for damages under these provisions are (1) damage to plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with an intent to deceive, manipulate or defraud (scienter), (4) in connection with the purchase or sale of securities, and (5) furthered by defendant's use of the mails or any facility of a national securities exchange.

*Bochicchio v. Smith Barney, Harris Upham & Co.*, 647 F.Supp. 1426, 1429 (S.D.N. Y.1986).

Plaintiffs have offered several pieces of evidence, which, taken together, create a material issue of fact as to whether Petrou

---

**1.** The record reflects that Bradley himself never received any compensation, in the form of commissions or otherwise, for managing Mrs. Robbins' investments.

and Shearson engaged with Bradley in a scheme to defraud Mrs. Robbins by generating excessive commissions for Petrou: (1) Bradley and Shearson had a business relationship dating back approximately thirty years, (2) Petrou was in his seventies during the period of time in which the alleged scheme was executed, (3) the commissions generated by the trading in Mrs. Robbins account constituted a substantial portion of Petrou's income, (4) Shearson was aware of the large volume of trading and asked Mrs. Robbins to sign a letter directed to its Compliance Directors which said:

I am and have been aware of all transactions in my account. I am and have been aware that these transactions resulted in significant commissions being paid to your firm and the Financial Consultant servicing my account. In addition, all the transactions were made with my consent and with my prior full knowledge as to the nature of the speculative risks involved in these investments.

Plaintiffs' 3(g) Statement, Last Exhibit, (5) Mrs. Robbins was diagnosed as suffering from senile dementia before she signed the Agreement, (6) Petrou was aware of Mrs. Robbins' physical and mental infirmity when he executed the trades in question, (7) on Shearson's "Discretionary Account Information" form, Mrs. Robbins characterized her investment objectives as "Long Term Capital Gains," despite an option of selecting "Short Term Capital Gains Involving A High Degree Of Risk And Trading Activity." The same form listed Mrs. Robbins' net worth as between $25,000 and $50,000, while specifying that she had no annual salary, and that her annual income was $20,000, (8) during the period in question, over 300 trades were executed in approximately 450 trading days, and the turnover ratio was 7, and (9) commissions and margin interest consistently exceeded income earned.

These allegations by plaintiffs make out a sufficient case to preclude summary judgment. Consequently, defendants' motion is denied as to Count 1.

■ Summary judgment is also denied as to Count 2. "Churning is a synonym for overtrading, and simply refers to the excessive rate of turnover in a controlled account for the purpose of increasing the amount of commissions." *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983) (citations omitted); *see also Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1069 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). To establish a churning violation, plaintiffs must prove three elements: (1) the broker exercised control over the account, (2) the trading in the account was excessive in light of the customer's investment objectives, (3) the broker acted with intent to defraud or with willful and reckless disregard for the customer's interests (i.e. scienter). *M & B Contracting Corp. v. Dale*, 795 F.2d 531, 533 (6th Cir.1986); *Arceneaux v. Merrill*, 767 F.2d 1498 (11th Cir.1985); *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 324 (5th Cir.1981); *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 821 (9th Cir.1980).

The gravamen of defendants' motion is that Petrou and Shearson did not control Mrs. Robbins' account because they only executed securities transactions as instructed by Bradley. In support of this contention, defendants offer testimony by Bradley that he alone made investment decisions for Mrs. Robbins. However, if Petrou and Shearson were engaged in a scheme with Bradley to defraud Mrs. Robbins, then Petrou and Shearson share responsibility with Bradley for the control of her account. Plaintiffs have offered ample evidence to create a factual issue about whether such a scheme existed. Summary judgment is therefore inappropriate.

### III. Substitution of Howard Carr as Plaintiff

Howard C. Carr has been appointed executor of the Estate of Robbins by the Court of Probate in Litchfield, Connecticut. Plaintiffs' have moved to have him substituted as "party plaintiff" in the current lawsuit before the Court. Plaintiffs' motion is granted.

### CONCLUSION

For the reasons set forth in the opinion above, plaintiffs' motion for arbitration is

denied, and defendants' cross-motion for summary judgment is denied. Plaintiffs' motion to substitute Howard C. Carr as plaintiff is granted.

SO ORDERED.