938 F.2d 1574
 RICO Bus.Disp.Guide 7814
 COM-TECH ASSOCIATES, a Connecticut limited partnership, by
all its limited partners, and Martin Warshauer, Philip K.
Hills, Jr., Norman J. Peer, Renato Valente, Robert Haskell,
John Sommers, Frederic S. Elliot and Edwin Lichtig,
individually, Plaintiffs-Appellees,
v.
COMPUTER ASSOCIATES INTERNATIONAL, INC., Charles B. Wang,
Anthony W. Wang, Arnold S. Mazur, Abraham
Poznanski and Peter Schwartz,
Defendants-Appellants.
 No. 1441, Docket 91-7093.
 United States Court of Appeals,
Second Circuit.
 Argued May 14, 1991.
Decided July 18, 1991.
 
 Jeffrey C. Slade (Meister Leventhal & Slade, New York City, Laura F. Dukess, of counsel), for plaintiffs-appellees.
 Benjamin P. Michel, Morristown, N.J. (Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., Janet F. Moss; Berlack, Israels & Liberman, New York City, of counsel), for defendants-appellants.
 Before LUMBARD, FRIEDMAN* and CARDAMONE, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Defendants Computer Associates International, Inc., Charles Wang, Anthony Wang, Arnold Mazur, Abraham Poznanski and Peter Schwartz appeal from that portion of the January 2, 1991 order of the Eastern District of New York, Arthur D. Spatt, Judge, which denied their motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. Secs. 1-15 (1988). The district court held that although the dispute was subject to arbitration, the defendants had waived their contractual right to compel arbitration. We agree that, under the circumstances, the defendants had waived any existing contractual right to compel arbitration. Consequently, we need not consider the district court's determination that the dispute was arbitrable.
 
 
 2
 This dispute arises out of two contracts, executed in October 1978, between plaintiff Com-Tech Associates, a limited partnership formed in 1978 for the purposes of investing in the development of a tape management software program, and defendant Computer Associates's predecessors, Trans-American Computer Associates, Inc. and Computer Associates International, Ltd. (collectively referred to as Computer Associates). The contracts required Computer Associates to develop and market the program, known as CA-DYNAM/T-OS. The development of the program was not completed within the time prescribed in the contract. In late 1979, the defendants urged the Com-Tech limited partners--plaintiffs Martin Warshauer, Philip Hills, Norman Peer, Renato Valente, Robert Haskell, John Sommers, Frederic Elliot and Edwin Lichtig--to acquiesce in an extension of time within which Computer Associates was required to develop and market the program. As a result, Com-Tech agreed to a modification of one of the contracts in 1980.
 
 
 3
 On September 30, 1987, Com-Tech, and its limited partners, initiated this action alleging that Computer Associates intentionally misrepresented certain computer developments in the industry in order to induce the limited partners of Com-Tech to make the 1980 modification. Com-Tech also contends that Computer Associates issued fraudulent reports regarding the marketing of the CA-DYNAM/T-OS program by knowingly omitting more than $5,000,000 in receipts, thus defrauding the Com-Tech partnership of royalty income in the amount of approximately $1,500,000 for a period of five years. Com-Tech alleges that this conduct violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968 (1988), and constituted common law fraud, breach of fiduciary duty and breach of contract.
 
 
 4
 The defendants answered on November 30, 1987 and raised six separate defenses, but failed to raise the defense of arbitration. On January 11, 1989, plaintiffs filed an amended complaint. The defendants' answer on February 9, 1989, set forth various defenses but again failed to raise the arbitration defense. After the initial pleadings were filed, the parties engaged in extensive pre-trial discovery for nearly two years. Defendants took ten depositions, including those of seven plaintiffs, which consumed 2,442 pages of transcript, all relating to claims which the district court stated were arbitrable. During the eighteen month period between the first answer and their motion to compel arbitration, defendants were sanctioned three times for non-compliance with discovery requests. On May 3, 1989, the district court ordered that discovery be completed by July 7, 1989, and scheduled trial for September 1989.
 
 
 5
 It was not until May 31, 1989, that the defendants moved to compel arbitration pursuant to the terms of Com-Tech's Limited Partnership Agreement. Thus, the question of arbitration was raised for the first time eighteen months after defendants first answered the complaint. Defendants' motion to compel arbitration was part of an omnibus motion for partial summary judgment, for judgment on the pleadings, to dismiss for lack of subject matter jurisdiction, and to strike punitive damages allegations. Thus, plaintiffs were forced to litigate those issues in addition to opposing arbitration.
 
 
 6
 On December 31, 1990, the district court granted defendants' motion for judgment on the pleadings on plaintiffs' RICO claim under 18 U.S.C. Sec. 1962(d), and denied defendants' other motions including the motion to compel arbitration. In deciding the latter motion, Judge Spatt concluded that "this is one of those rare cases in which the defendants' conduct resulted in prejudice to the plaintiffs supporting the doctrine of waiver of the right to compel arbitration." Com-Tech Associates v. Computer Associates Int'l., Inc., 753 F.Supp. 1078, 1086 (E.D.N.Y.1990). Pursuant to 9 U.S.C. Sec. 16(a)(1)(A) (West Supp.1991), defendants appeal from that portion of the district court's order denying their motion to compel arbitration. We affirm.
 
 
 7
 We recognize that there are strong federal policies in favor of arbitration and that a waiver of arbitration " 'is not to be lightly inferred,' " Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985) (quoting Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968)). Mere delay in seeking arbitration, absent prejudice to the opposing party, does not constitute waiver. Rush, 779 F.2d at 887; Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., 754 F.2d 457, 463 (2d Cir.), cert. denied, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); Carcich, 389 F.2d at 696. However, "the litigation of substantial issues going to the merits may constitute a waiver of arbitration." Sweater Bee, 754 F.2d at 461; see also Demsey & Associates, Inc. v. S.S. Sea Star, 461 F.2d 1009 (2d Cir.1972) (trial on the merits prior to the motion to compel arbitration resulted in waiver).
 
 
 8
 The protracted litigation which preceded the motion to arbitrate compels us to affirm the district court's holding that defendants waived their contractual right to compel arbitration. The defendants did not assert the defense of arbitration in either of their answers. Defendants extensively deposed the plaintiffs. Shortly before the scheduled completion of discovery--a full eighteen months after answering the complaint and only four months before the scheduled trial date--defendants first raised the issue of arbitration in an omnibus motion for judgment on the pleadings and partial summary judgment, thereby forcing plaintiffs to litigate arbitrable issues. See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 238-242, 107 S.Ct. 2332, 2343-2345, 96 L.Ed.2d 185 (1987) (civil RICO claims are subject to an arbitration clause). These maneuvers put plaintiffs to considerable additional expense, and further delayed the proceedings. To permit litigants to participate fully in discovery, make motions going to the merits of their opponent's claims, cf. Teltronics Services, Inc. v. L M Ericsson Telecommunications, Inc., 642 F.2d 31, 34 (2d Cir.), cert. denied, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981) (" 'judgments under rule 12(b)(6) are on the merits, with res judicata effects.' ") (quoting Exchange Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir.1976)), and delay assertion of a contractual right to compel arbitration until the eve of trial defeats one of the reasons behind the federal policy favoring arbitration: that disputes be resolved without "the delay and expense of litigation." H.R.Rep. No. 536, 68th Cong., 1st Sess. at 3 (1924).
 
 
 9
 This case is distinguishable from Sweater Bee, 754 F.2d 457, where we found that the defendants did not waive their right to compel arbitration by participating in discovery for two years and by filing a motion under Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint. In Sweater Bee, the defendants had previously asserted arbitration as a defense in their answer. In addition, many of the claims which were the subject of the Rule 12(b)(6) motion in Sweater Bee were nonarbitrable. 754 F.2d at 463. Here, the defendants did not seek arbitration until eighteen months after they filed their first answer. Moreover, as the district court found, "most, if not all of the issues raised by the plaintiffs in this forum are arbitrable." 753 F.Supp. at 1084.
 
 
 10
 This case is also distinguishable from Rush where we held that the defendants did not waive their contractual right to compel arbitration even though they had moved to dismiss the complaint, engaged in some discovery and failed to raise the defense of arbitration in their answer. Focusing on the primary area of concern in waiver of arbitration cases, this court determined that the plaintiff failed to demonstrate prejudice. 779 F.2d at 887-890. In holding that there was no waiver, the Rush court distinguished Bengiovi v. Prudential-Bache Sec., Inc., Fed.Sec.L.Rep. [CCH] p 92,012 (D.D.C.1985) from the facts in Rush. In Bengiovi, prior to trial, the defendant answered, engaged in discovery and moved for partial summary judgment. Bengiovi held that the delay and expense of having to defend the summary judgment motion resulted in waiver. Judge Pratt's opinion in Rush stated:
 
 
 11
 Moreover, the instant case is distinguishable from [Bengiovi ].... After answering, defendants participated in several discovery procedures and, ultimately moved for partial summary judgment.... The district court denied the motion, holding that the plaintiff had been prejudiced by defendant's delay in seeking arbitration.
 
 
 12
 The defendant in Bengiovi, however, had already put plaintiff to the expense of having to defend a motion for partial summary judgment, and it had moved for arbitration eight and one-half months after answering the complaint and only four and one-half weeks before trial--much later in the litigation than defendants' motion here. Moreover the delay in that case was in no way attributable, as here, to the district judge's change of heart on the important issue of punitive damages. Thus, the expense and delay in the present case fall well short of what the Bengiovi court found sufficient to constitute a waiver of arbitration.
 
 
 13
 779 F.2d at 888.
 
 
 14
 Here, plaintiffs were put to the expense not only of engaging in extensive depositions, but also of defending motions for judgment on the pleadings and partial summary judgment. In addition, the defendants did not move to compel arbitration until eighteen months after they filed their answer. In Rush, the time between the defendants' first response to the complaint (a motion to dismiss) and their motion to compel arbitration was only six months. Moreover, the defendants in Rush asserted that the delay was in part due to the intertwining doctrine which, prior to Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), prevented arbitration of pendent claims in securities fraud cases. Finally, Rush differs from the present case because there "the sole significant occurrence between the time of defendants' answer and the time defendants moved to compel arbitration was the reinstatement" of a common law claim for punitive damages. 779 F.2d at 889. Here, discovery was nearly complete and trial had been scheduled for September 1989 before the defendants made their motion on May 31. The proximity of trial, as well as defendants' full participation in discovery, including the deposition of seven plaintiffs, support the district court's conclusion that defendants had forfeited their contractual right to compel arbitration.
 
 
 15
 Had the defendants claimed their contractual right to arbitrate promptly after the complaint was filed in 1987, this dispute probably would have been resolved before now with less trouble and expense to all parties. To permit litigants to exercise their contractual rights to arbitrate at such a late date, after they have deliberately chosen to participate in costly and extended litigation would defeat the purpose of arbitration: that disputes be resolved with dispatch and with a minimum of expense. We agree with Judge Spatt that this is "one of those rare cases" in which the contractual right to arbitration has been waived because of the prejudice the opposing parties have suffered as a result of the defendants' delay in seeking arbitration.
 
 
 16
 Affirmed.
 
 
 
 *
 Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation