I dissent from the main opinion insofar as it concludes that ProEquities's participation in the litigation process amounts to a waiver of its right to compel the Haleses to arbitrate. This Court stated in Mutual Assurance, Inc. v. Wilson,716 So.2d 1160, 1164 (Ala. 1998), that "`"`[m]erely answering on the merits, asserting a counterclaim (or crossclaim) or participating in discovery, without more, will not constitute a waiver [of the right to compel arbitration].'"'" (Quoting Ex parte MerrillLynch, Pierce, Fenner Smith, Inc., 494 So.2d 1, 3 (Ala. 1986), quoting in turn other cases).
We are to look at the facts of each case to determine whether a party has waived its right to enforce a valid arbitration agreement. See Companion Life Ins. Co. v. Whitesell Mfg., Inc.,670 So.2d 897, 899 (Ala. 1995). The United States Court of Appeals for the Third Circuit in Hoxworth v. Blinder, Robinson Co., 980 F.2d 912, 925-26 (3d Cir. 1992), stated that it had
 "approved of cases finding waiver `where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'. . . . [P]rejudice is the touchstone for determining whether the right to arbitrate has been waived. . . .
 ". . . [I]n this case defendants participated in numerous pretrial proceedings during the more than eleven months before Blinder, Robinson moved to compel arbitration. Defendants filed a motion to dismiss the complaint for failure to state a claim on which relief could be granted and a motion to disqualify plaintiffs' counsel; they took the deposition of each of the named plaintiffs, depositions that would not have been available in arbitration; . . . they inadequately answered plaintiffs' discovery requests, prompting plaintiffs to file two motions to compel the production of documents and answers to interrogatories, which defendants opposed; and they later moved for a stay of discovery. In addition, defendants consented to the district *Page 109 
court's first pretrial order consolidating the three class actions, and they filed a lengthy memorandum in opposition to plaintiffs' motion for class certification. Only on December 21, 1988, after defendants' motion to dismiss the complaint was denied and plaintiffs' motion to compel discovery was granted, did Blinder, Robinson file its motion to compel arbitration.
 "Plaintiffs have characterized the prejudice they suffered from defendants' failure to raise arbitration promptly as twofold: plaintiffs devoted substantial amounts of time, effort, and money in prosecuting the action, while defendants were able to use the Federal Rules [of Civil Procedure] to conduct discovery not available in the arbitration forum."
In Big Valley Home Center, Inc. v. Mullican, 774 So.2d 558
(Ala. 2000), this Court held that Big Valley had waived its right to compel arbitration; only after all trial preparations were complete, all discovery had been completed, and Mullican refused its settlement offer made on the day trial was to begin, did Big Valley move the next day to compel arbitration. Even though arbitration is strongly favored by federal law (see MitsubishiMotors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614,105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)), this Court, like the Third Circuit in Hoxworth, found a waiver of the right to compel arbitration. The expense of completed trial preparations and the information gained through extensive discovery (which could not have been obtained through arbitration) showed sufficient prejudice to warrant a decision that the right to compel arbitration had been waived.
In the case before us today, the timeline is as follows: On August 5, 1999, the Haleses sued ProEquities and Gregory for conversion, breach of contract, fraud, breach of fiduciary duty, and willfulness and wantonness. On September 10, 1999, defendant Gregory moved to dismiss the complaint or, in the alternative, to transfer the case to Madison County, and on September 14, 1999, ProEquities moved to dismiss the complat on the ground of improper venue. On November 12, 1999, the Marshall Circuit Court transferred the case to the Madison Circuit Court. On November 22, 1999, Gregory moved for a stay of the case pending appeal of his criminal convictions.[5] A year later, on November 2, 2000, the Haleses' attorney noticed the deposition of Frank Hales for December 15, 2000, and later re-noticed Hales's deposition for January 16, 2001. The Haleses canceled the January 16, 2001, deposition at the request of ProEquities' attorney so that attorneys for both sides could discuss a possible conflict of interest on the part of one of the Haleses' attorneys and to discuss a possible settlement.
On January 31, 2001, the trial court ordered the parties to mediate the dispute and to report the status of mediation by March 1, 2001. The trial court placed the case on its administrative docket. On May 24, 2001, the Haleses' attorney re-noticed the deposition of Frank Hales for June 6, 2001. On May 25, 2001, ProEquities noticed the depositions of Frank Hales and Iva Hales for June 6, 2001. The parties again canceled the depositions to explore a settlement of the case.
On May 31, 2001, ProEquities answered the complaint and asserted various affirmative defenses. On June 20, the Haleses amended their complaint to asserts claims *Page 110 
against ProEquities for negligent and wanton hiring, training, monitoring, supervision, and retention, and for negligent and wanton failure to adopt, to promulgate, or to enforce policies and procedures in accordance with what they called the "Alabama Securities Commission Code." On June 22, the Haleses served ProEquities with interrogatories and requests for production. On July 10, the Haleses' attorney re-noticed the deposition of Frank Hales for August 13, 2001, and on July 19, 2001, ProEquities re-noticed the depositions of Frank and Iva Hales for August 13, 2001, and included a request for the production of certain documents. On July 25, 2001, ProEquities answered the amended complaint and again asserted various affirmative defenses.
On August 13, 2001, the parties deposed Frank Hales. Thereafter, the Haleses filed a second amended complaint substituting McDowell Enterprises stock for InsNet, Inc., stock. On September 6, 2001, defendant Gregory wrote the trial court a letter stating that he was incarcerated and could not attend the trial on the scheduled date, apparently during the first week of November 2001. He asked the court to delay the trial until he could obtain his records and prepare for trial. The briefs do not state whether this request was granted.
On October 5, 2001, ProEquities answered the second amended complaint and asserted affirmative defenses. ProEquities moved to compel the Haleses to submit their claims to arbitration pursuant to the predispute arbitration agreement signed by Frank Hales and moved to stay the Haleses' action pending the arbitration.
ProEquities did not move to compel arbitration until some two years after the Haleses filed their complaint; however, during that two-year period the trial court resolved a venue dispute, stayed the case for a year pending resolution of another defendant's criminal trial, and again stayed the case while it was referred to mediation. The Haleses amended their complaint twice, substantially altering the grounds on which they sought damages. The parties also jointly postponed discovery numerous times while seeking to settle the dispute. When the Haleses' claims reached their final form and the first deposition and document production in the case occurred, ProEquities promptly answered the final amended complaint and moved to compel arbitration. ProEquities moved to compel arbitration after only one, jointly noticed deposition had occurred.
"A party seeking to prove waiver of a right to arbitrate must demonstrate . . . prejudice to the party opposing arbitration resulting from such inconsistent acts. The party arguing waiver of arbitration bears a heavy burden of proof." Britton v. Co-opBanking Group, 916 F.2d 1405, 1412 (9th Cir. 1990). The Haleses do not make a showing that delay in seeking arbitration prejudiced them, other than to argue in conclusory fashion that the expense of preparations for trial was prejudicial. Unlike the plaintiffs in Hoxworth, the Haleses make no argument that ProEquities, by delaying its motion to compel arbitration, obtained information not available through arbitration. Also unavailing is the Haleses' argument that ProEquities waived its right to compel arbitration by not raising it as an affirmative defense in its first answer and that any grant of a motion to compel arbitration made after that point was unduly prejudicial.
 "Nor is waiver established by the fact that [the defendant] failed to raise as an affirmative defense the agreement to arbitrate. Absent a showing of prejudice by the [plaintiffs], the bare fact that [the defendant] failed to raise an affirmative *Page 111 
defense is inadequate by itself to support a claim of waiver of arbitration. Rush v. Oppenheimer Co., 779 F.2d 885, 889 (2d Cir. 1985)."
Fisher v. A.G. Becker Paribas, Inc., 791 F.2d 691, 698 (9th Cir. 1986).
Given the sequence of events occurring in this case before the motion to compel arbitration was filed, and the failure of the Haleses to prove sufficient prejudice caused by the delay in filing the motion to compel arbitration, I respectfully dissent from the main opinion's holding that ProEquities waived its right to compel the Haleses to arbitrate their dispute.
[5] The main opinion notes that there is no record that the trial court's order granting the stay was filed in the clerk's office; however, there were no developments in the Haleses' case during the year that followed the trial court's "purported" issuance of the stay.