William B. Brehhah, Jr., J.
On December 21, 1956 the defendant Super Car Wash, Inc. (“ Car Wash ”), then operating an auto laundry on a part of the property at the southwesterly corner of Grand Concourse and East 140th Street, Bronx, entered into a contract with the plaintiff Harold Price to sell him that business and to obtain for him a lease from the defendant Concourse Super Service Station, .Inc. (“ Concourse Super”), described in the agreement as “ the major tenant of the premises on which the auto laundry business is located ”, in the form approved by the parties for a term commencing January 1, 1957 and ending August 29, 1972. Car Wash was to receive $28,000 for the business, Concourse Super, $32,000 for the lease, and the contract was conditioned upon the procurement of such a lease.
This agreement provided, in part, that “Purchaser [Price] shall not be required to accept other than good title to both the business of the seller [Car Wash] or to the leasehold [from Concourse Super].” If good and marketable title could not be conveyed, the agreement would end.
The defendant Kettler, who warranted himself to be the majority stockholder in both Car Wash and Concourse Super *351 and who was in fact the sole stockholder, joined Car Wash in making 7 of 11 express representations in the agreement, including those relating to the source of Concourse Super’s power to grant the purchaser a lease for the Car Wash area. Among these were representations that the entire property, including the car wash area and an adjoining gasoline station, was subject to a sublease from Concourse Super to Esso Standard Oil Company (“ Esso ”) and “ that there is in existence a sub-lease from Esso =:t * * to Concourse Super.” In addition to a statement that the “ leases and sub-lease hereinbefore referred to have been exhibited to the purchaser and his attorney ’ ’, it continues: ‘ ‘ That the sub-lease from Concourse Super * * * * * * to Esso * * * and from Esso * * * to Concourse Super are co-existent as to term.” The agreement provides that “ there are no representations being made by the seller other than those herein specifically set forth.”
This agreement was executed by the attorney for Harold Price as attorney in fact and also bears the signature of Harold Price.
In a second transaction, or, more accurately, two transactions involving related subject matter, the plaintiff George L. Price acquired from the defendant Nausbaum 50% of the issued and outstanding capital stock of Concourse Servicenter Inc. (“ Servicenter ”) and then from the defendant Kettler the remaining 50% of such stock. The latter deal is reflected in an agreement made April 4, 1957, between said George L. Price and Kettler, which followed the transaction in which Price acquired Nausbaum’s shares. Concourse Super was the landlord of Servicenter which operated the gasoline station on the premises at the southwest corner of Grand Concourse and East 140th Street next to the Car Wash. It joined in the Price-Kettler agreement of April 4, 1957 for the purpose of representing and agreeing, among other things, that it was the landlord under a subsisting sublease with Servicenter and that said sublease be amended to give the subtenant a free right of assignment of the sublease without consent of Concourse Super.
The controversy herein stems from a restrictive covenant against assignment or subletting contained in an instrument (hereinafter referred to as the “leaseback”) from Esso to Concourse Super, which, it is claimed, made it impossible for the defendant Concourse Super to grant to either Harold Price as the purchaser of Car Wash or to Servicenter, all of whose stock had been purchased by George L. Price, the subleases required or represented by the respective agreements of December 21, 1956 and April 4, 1957. The individual plaintiffs *352 are either the purchaser above described or assignees of their interests. The defendants include the sellers in the transactions outlined above, the officers and shareholders of the corporations involved, and one of the attorneys who represented the sellers. The action seeks rescission of the Car-Wash deal, rescission of the transaction by which the shares of Servicenter were acquired, and damages for fraud and conspiracy.
An understanding of the basic issue in controversy requires a reference to past lease transactions. Concourse Super is the prime lessee of the entire parcel on which are located the Car Wash and the gasoline station. That lease, made August 24, 1951, was for a 21-year term commencing September 1, 1951, and expiring August 31, 1972. It granted Concourse Super the right to sell, assign, transfer or mortgage the premises and it was recorded. Plaintiffs eoncededly had full knowledge of this lease and it was returned in the title certification which they ordered prior to closing the first (Car Wash) transaction.
On the same day, Concourse Super sublet the entire parcel to Esso for a 10-year term commencing September 1, 1951 and expiring August 31, 1961. This sublease was also recorded and returned in the title report; and there is no dispute as to plaintiffs’ knowledge of it. It was, naturally, subject to the provisions of the prime lease and granted Esso the right to sublet all or any part of the premises. It reserved a right in Concourse Super to cancel the sublease at any time after the expiration of two years upon stipulated conditions. This right was never exercised.
Concurrently, Esso made a leaseback of the premises to Concourse Super for the term of two years from September 1, 1951 to August 31, 1953. This was the same period following termination of which Concourse Super could cancel the sublease. The instrument was recorded on August 29, 1951, with the two preceding instruments. By 1956, however, the time when the contract in suit was executed, the leaseback had expired (so far as the record was involved) and it was accordingly not returned in the title report made to plaintiffs’ counsel. The leaseback was modified by an unrecorded agreement made July 28, 1953, which extended the term to September 30, 1957. This added four years to the original term specified in the leaseback. It was correlated with a recorded modification of Concourse Super’s right to cancel the sublease by extending the firm term of the sublease by an additional 4 years — i.e., Concourse Super’s right to so cancel could not now be exercised during the first 6 years of the 10-year term thereof.
*353 Thereafter, on March 27,1956, prior to plaintiffs’ negotiations and closings with defendants, Concourse Super and Esso agreed to a further modification of the sublease which, by terminating the right of Concourse Super to cancel said sublease, gave to Esso a firm noncancelable term expiring August 31, 1961. This instrument was recorded June 12, 1956 and was concededly known to the plaintiffs; it is reported in their title certification. The defendants contend that the leaseback was also extended accordingly although no writing to effect such an extension was then made. However, following the closing of the transactions in suit, the leaseback from Esso to Concourse Super was extended to August 30, 1961 by a writing dated as of September 29, 1957. This instrument made formal for the third time the understanding between Concourse Super and Esso that the sublease and leaseback should be coterminous to the extent that Esso itself had a noncancelable term under the sublease.
The leaseback contained a clause whereby the lessee (Concourse Super) agreed “ to make no assignment of this lease nor sublet the premises herein demised.” The plaintiffs assert that they did not see the leaseback prior to closing their transactions and thus did not know of its contents or of the restriction; that it was affirmatively represented that the Esso leaseback was identical in terms to the Esso sublease which did contain a right to sublet; that the provision of the leaseback forbidding assignment and subletting made it impossible for Concourse Super to grant a sublease to plaintiffs or Servicenter; and that the consequence is a failure of consideration in the transactions involving the plaintiffs.
If there was a failure of consideration, there is no need to consider whether there was any misrepresentation or concealment, intentional or not. At issue, therefore, is the validity of the Concourse Super sublettings to Harold Price and to Servicenter.
The leaseback from Esso to Concourse Super containing the restriction against assignment and subletting also provided that 1 ‘ if default shall be made in any of the covenants herein contained, then it shall be lawful for Lessor [Esso] * * *
to re-enter said premises, remove all persons therefrom and terminate this lease.” The record is clear that Esso never exercised or threatened to exercise this option. As a matter of law, breach of the restrictive covenant would not void the leaseback. It would only create a situation under which Esso could, by taking advantage of it, re-enter (Storms v. Manhattan Ry. Co., 77 App. Div. 94, 98, 99, affd. 178 N. Y. 493; Liebmann’s Sons Brewing Co. v. Lauter, 73 App. Div. 183, 184). This right of *354 re-entry was entirely at the option of Esso which could either exercise it or related rights (see Symonds v. Hurlbut, 240 N. Y. 96, 98), or waive them. Waive them it did, for the record establishes that Esso had knowledge of the subletting and had no objection to the possession of the premises by the plaintiffs. Moreover, the gasoline station itself had been sold three times prior to the sale of the stock of the operating subtenant to plaintiffs, and there is no evidence that Esso had objected on any one of these occasions despite the technical breach of covenant involved. The plaintiffs do not claim, nor does the record establish, any ouster of them by Esso. In fact, it was on December 27, 1957, long after the closing of the transactions involved in this suit and when the plaintiffs were in possession that Esso executed (as of September 29, 1957) the extension of the leaseback which in the absence of the extension would have otherwise expired on September 30, 1957. At that time the plaintiffs had been in possession of the ear wash for almost a year and of the gasoline station for nine months, and there is evidence that the extension of sublease was obtained in order to satisfy a request of the plaintiffs for written acknowledgement by Esso that the term of the leaseback was as extensive as the term of the sublease into Esso. It would be difficult to find a clearer waiver by Esso of its rights or a more positive demonstration of its acceptance of the plaintiffs as sublessees of the premises. In fact then, if not in theory, the plaintiffs got everything they bargained for and were undisturbed in their enjoyment and use of the premises. Thus there was no failure of consideration.
With respect to the allegations of misrepresentation and fraud, the plaintiffs argue vigorously that they did not see the leaseback, did not know its contents and were misled by alleged representations that the leaseback was identical to the sublease. Although the testimony of the parties and their respective counsel in the transactions between them is sharply contradictory on those issues, one fact is certain — prior to the first closing (i.e., of the Car Wash deal) the plaintiffs had notice from the title company of their choice, that Concourse Super had made a sublease of its entire interest in the premises for 10 years to Esso and that barring some agreement or arrangement, Concourse Super had thereby ousted itself from possession or the right to give possession to anybody else for the term of its sublease to Esso. The exception sheet expressly required the sublease to be surrendered (or otherwise disposed of), because its existence was an obvious bar to Concourse Super’s ability to convey a term commencing* earlier than August 31, 1961, the expiration date of the sublease. Plaintiffs say they relied upon *355 a representation that there was a leaseback identical to the sublease and closed the transaction and permitted the title company to take an exception accordingly. However, the facts are that the closing was adjourned to permit removal of other exceptions; no affidavit as to the facts relating to the leaseback was sought by plaintiffs or the title closer; and no inquiry was made of the most obvious source of information, to wit, Esso, either before the closing of the Car Wash deal in January or of the final gasoline station stock purchase in April.
In Bird v. Salt Hill Corp. (282 App. Div. 1047) it appeared that an abstract of title which defendants employed in connection with their acquisition of title indicated the presence of restrictive covenants. The court succinctly said: ‘ ‘ That should have suggested an inquiry which, if diligently* prosecuted, would have disclosed the covenant (see Williamson v. Brown, 15 N. Y. 354, 362, 364, and Kingsland v. Fuller, 157 N. Y. 507, 511).”
In Williamson v. Brown (15 N. Y. 354) the prevailing opinion stated at page 362: “If these authorities are to be relied upon, and I see no reason to doubt their correctness, the true doctrine on this subject is, that where a purchaser has knowledge of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a bona fide purchaser.” The concurring opinion stated at page 364: “ Where the information is sufficient to lead a party to a knowledge of a prior unrecorded conveyance, a neglect to make the necessary inquiry to acquire such knowledge, will not excuse him, but he will be chargeable with a knowledge of its existence: the rule being that a party in possession of certain information will be chargeable with a knowledge of all facts which an inquiry, suggested by such information, prosecuted with due diligence, would have disclosed to him.” (See, also, Cambridge Val. Bank v. Delano, 48 N. Y. 326, 336; Cassia Corp. v. North Hills Holding Corp., 278 App. Div. 960; Kingsland v. Fuller, 157 N. Y. 507, 511.)
The evidence indicates that the plaintiffs had knowledge when they closed the transactions here involved of facts sufficient to put them on inquiry as to the existence of a right in others in apparent conflict with interests in the subleases which they were about to acquire. In any event, the actual closing of the transactions by the plaintiffs under the circumstances of this case constituted an acceptance of such right, title and interest as the respective defendants could convey. There is no question of the right of the plaintiffs to proceed with the transactions and waive *356 any objections to the state of the title (Clark Co. v. New York, New Haven & H. R. R. Co., 279 App. Div. 39). The original contract provision that ‘ ‘ Purchaser shall not be required to accept other than good title ” cannot be construed to mean that plaintiffs could not accept less than they contracted for if that in fact were all that was proffered. It is further established that a counterpart of the leaseback was received on or about April 19, 1957 by the attorney for the plaintiffs who also acted as their agent and attorney-in-fact in negotiating and closing the Car Wash transaction. Yet no effort was made to rescind the transactions, nor was any complaint made relating- thereto, until two years later. The plaintiffs seek to explain this delay by evidence that their attorney and agent did not read the instrument he concededly received. But if he did not read it when he received it, he and his clients are nonetheless chargeable with knowledge of its contents as of the date of receipt.
The plaintiffs urge that actual fraud was committed upon them by the defendants in not producing the expired leaseback irnt.il after all transactions had been closed and in orally misrepresenting the contents of the leaseback. As has already been stated, there is sharp conflict in the testimony in this respect. It is academic to note that the burden of proof in this litigation rests upon the plaintiffs and that they can only prevail if they sustain the burden of proof. In the absence of establishing their contentions by a preponderance of evidence, the plaintiffs must fail. For the reasons already stated, the court is not persuaded by a preponderance of the evidence that the representations alleged to have been made were in fact made. Further, if it be assumed arguendo that they were made, they were made under such circumstances as to prevent a finding that reliance thereon was justified.
The parties dealt at arm’s length. They were careful to document their conversations and understandings in the comprehensive agreements which are in evidence. The Car Wash agreement expressly excluded representations not specifically set forth therein. Those set forth therein relating to the leaseback have not been breached since it was in existence and coexistent as to term with the sublease. The extension of the original leaseback, though expressed in a formal writing by Esso made after the closing, related back thereto (cf. Fries v. Clearview Gardens Sixth Corp., 285 App. Div. 568). The alleged oral representations if not merged in the agreement or otherwise inadmissible (cf. Danann Realty Corp. v. Harris, 5 N Y 2d 317) have not been established. None of the theories advanced by plaintiffs has been sustained.
*357 The defendants are entitled, therefore, to judgment dismissing the complaint, with costs. All motions upon which decision was reserved at the trial are resolved in accordance herewith. This constitutes the decision of the court required by section 440 of the Civil Practice Act.