Terrence BURNS, M.D. and
John Zoll, Plaintiffs,

v.

IMAGINE FILMS ENTERTAINMENT, INC., MCA, Inc. and Universal City Studios, Inc., Defendants.

No. 92–CV–243S.

United States District Court,
W.D. New York.

Feb. 16, 1996.

Phillips, Lytle, Hitchcock, Blaine & Huber (Jeremiah J. McCarthy, Paul B. Zuydhoek, and David S. Teske, of counsel), Buffalo, New York, for plaintiffs.

Jaeckle, Fleischmann & Mugel (Linda H. Joseph and Jennifer M. Demert, of counsel), Buffalo, New York, for defendants.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Honorable William M. Skretny on July 15, 1992 for determination of any non-dispositive motions. The matter is presently before the court on Defendants' motion for leave to amend Defendants' Answers, filed June 23, 1995.

### BACKGROUND and FACTS

Plaintiffs, Terrence Burns, M.D. and John Zoll, commenced this copyright infringement action on April 8, 1992. Plaintiffs, both firefighters, claim that they collaborated on two screenplays about firefighters which they sent to Anthony Yerkovich a screenwriter located in Santa Monica, California. Plaintiffs entered agreements on July 21, 1988, August 16, 1988, and May 16, 1989, in connection with the submission of their original screenplays, "Down to Gehenna" and "Baptism of Fire," to Anthony Yerkovich Productions. These agreements ("the Submission Agreements") provide that Anthony Yerkovich Productions will read the material submitted, and, if such material is used, the company must pay the owner the reasonable value of the material. However, "[i]f [Anthony Yerkovich Productions and the owner of the materials submitted] are unable to agree as to the reasonable value [of the materials submitted], the amount will be conclusively determined by a panel of three arbitrators. . . ." Reply Affidavit of Karen T. Green, filed December 12, 1995, Exhibit A, at

384

¶ 4.[1] Further, any award by the arbitrators "may not exceed the minimum amount which would be payable for such material under the Writers Guild of America Basic Agreement if there were an employment agreement between [Plaintiffs] and [Anthony Yerkovich Productions] for the preparation of such material." Reply Affidavit of Karen T. Green, filed December 12, 1995, Exhibit A at ¶ 4 ("Submission Agreements"). The Submission Agreements also indicate that any claim "arising in connection with the subject matter of this agreement must be brought within six months after [Anthony Yerkovich Production's] first use of the material in question ... [a]ny claim not brought within said six-month period is hereby barred." Submission Agreements at ¶ 5. A separate paragraph provides that the Submission Agreements apply to Anthony Yerkovich Productions, any company with which Anthony Yerkovich Productions is a party to an agreement for the production or financing of motion pictures or television programs and officers, agents, servants, employees, stockholders and representatives of Anthony Yerkovich productions or other companies with which Anthony Yerkovich Productions is associated, as discussed above. *Id*, at ¶ 8.

Plaintiffs contend that, thereafter, the movie *Backdraft*, a film about firefighters, was released in 1991 by Defendants Imagine Films Entertainment ("Imagine Films"), MCA, Inc. ("MCA"), and Universal City Studios ("Universal"), and that the screenplay for *Backdraft* used significant portions of Plaintiffs' screenplays, both of which were copyrighted works.

Familiarity with the procedural background of the case is assumed.

On June 23, 1995, Defendants sought leave to amend their Answers. Specifically, Defendants seek to add seven affirmative defenses based on the Submission Agreements and language clarifying proposed demands for attorney's fees under the copyright law.

Defendants also seek to add an affirmative defense alleging that any of Plaintiffs' infringement claims based upon events arising out of real life experiences must be barred.[2] Plaintiffs oppose the proposed amendments as Defendants are not entitled to invoke the defenses under the Submission Agreements, Defendants have waived their right to arbitrate, Plaintiffs would be procedurally and substantively prejudiced if arbitration was invoked at this late date, and the Submission Agreements do not apply to Plaintiffs' claims. No oral argument was held on this matter.

For the reasons discussed, Defendants' motion for leave to amend their Answers is DENIED in part and GRANTED in part.

## DISCUSSION

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleadings once as a matter of course prior to service of a responsive pleading or within twenty days of serving its pleading if no responsive pleading is required, otherwise, a party may only amend with written consent of the adverse party or by leave of court, which "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). " '[W]hen justice so requires' necessarily implies justice to both parties." *McDonnell v. Dean Witter Reynolds, Inc.*, 620 F.Supp. 152, 156 (D.Conn. 1985) (quoting *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211, 215 (S.D.N.Y.1978)).

Whether to permit amendment is committed to the discretion of the court, however, it is an abuse of discretion to deny leave to amend if the denial is not based on valid grounds. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Gomes v. Avco Corp.*, 964 F.2d 1330, 1335 (2d Cir. 1992); *Usery v. Marquette Cement Manufac-*

---

1. As each of the Submission Agreements contains identical language, the portion of the Submission Agreement referred to will be referenced by paragraph number, with the first full paragraph numbered as paragraph one.

2. Defendants claim that Plaintiffs wrongfully withheld a seven page document which contained Dr. Burns' notes and observations made while acting as a firefighter in Buffalo ("Burns Document"). Affidavit of Linda H. Joseph, filed June 23, 1995, Exhibit D.

turing Co., 568 F.2d 902 (2d Cir.1977). In deciding whether to permit amendment, the court may consider factors such as undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, undue prejudice to the opposing party, failure to cure deficiencies by previous amendments, or futility of amendment. *Foman, supra,* at 182, 83 S.Ct. at 230; *Evans v. Syracuse City School District,* 704 F.2d 44, 46 (2d Cir.1983). *See also* 3 Moore's Federal Practice ¶ 15.08[2] at p. 15–49. Leave to amend a pleading will be denied when an amendment is offered in bad faith, would cause undue delay or prejudice, or would be futile. *Foman, supra,* at 182, 83 S.Ct. at 230; *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647 (2d Cir.1987); *Fiske v. Church of St. Mary of the Angels,* 802 F.Supp. 872, 877 (W.D.N.Y.1992).

In this case, Defendants seek to add seven affirmative defenses based on the Submission Agreements, including arbitration, statute of limitations, contractual limitation on the amount of damages, failure to state a claim (based on the Submission Agreements and the fact that events arising out of real. life experiences must be barred), release or waiver of claim by Submission Agreements, reliance on any prior works not disclosed, and unclean hands; Defendants also want to add language clarifying the demands for attorney's fees pursuant to 17 U.S.C. § 505. Affidavit of Linda H. Joseph, filed June 23, 1995, Exhibit A. Plaintiffs argue that the proposed amendments to the Defendants' answers are futile, as the Submission Agreements do not apply to Plaintiffs' claims for copyright infringement, however, even if the Submission Agreements did apply to this suit, the Defendants waived these affirmative defenses and Plaintiffs have been prejudiced by virtue of the Defendants' failure to invoke the Submission Agreements earlier.

 A motion to amend an answer to raise additional affirmative defenses may be granted to the extent that the proposed affirmative defenses raise colorable ground for relief. *Fiske, supra,* at 877 (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Building 1 Housing Development Fund Co.,* 608 F.2d 28, 42 (2d Cir.1979)). In deciding whether a moving party has a colorable ground for relief sufficient to permit the amendment of the answer, the court must make a determination comparable to that required by Fed.R.Civ.P. 12(b)(6) as to whether the proposed amendment states a cognizable defense. *Silberblatt, supra; CBS, Inc. v. Ahern,* 108 F.R.D. 14 (S.D.N.Y.1985). Where a proposed amendment to add an affirmative defense raises a colorable ground for relief, the amendment should be permitted, absent prejudice to the plaintiff. *Fiske, supra,* at 877 (citing *Ragin v. Harry Macklowe Real Estate Co.,* 126 F.R.D. 475, 478–79 (S.D.N.Y.1989)).

The Submission Agreements specifically provide that *"if* [Anthony Yerkovich Productions or another company as provided for in the agreement] *use[s]* the material submitted by me and provided such material is novel or original or protectible under the law of literary property, and has not been obtained by you from another source, [Anthony Yerkovich Productions or the other company] will pay [the screenwriter] the reasonable value thereof." Submission Agreements at ¶ 4 (emphasis added). If there is any disagreement regarding the reasonable value of the material, the dispute will be resolved by arbitrators, who cannot award more than the minimum amount payable for such material under the Writers Guild of America Basic Agreement. Submission Agreements at ¶ 4. *See also* Defendants' Motion to Dismiss and/or Stay, filed October 25, 1995, Exhibit E (copy of the Writers Guild of America Basic Agreement).

 To support a request to order arbitration pursuant to an agreement, it must be established that an arbitration agreement exists, that the dispute falls within the scope of the arbitration agreement, and the dispute does not involve the making of the agreement or the failure to comply with the agreement. *Prudential Lines, Inc. v. Exxon Corporation,* 704 F.2d 59, 63 (2d Cir.1983). In this case, there is no dispute that the arbitration clause contained in the Submission Agreements exists. Plaintiffs, however, urge that their claims, asserted pending copyright infringement action, do not fall within the scope of the arbitration clause. Plaintiffs'

Memorandum of Law, filed November 17, 1995, at pp. 2–4.

The arbitration clause in the Submission Agreements is not broad, *i.e.*, any claim arising under this agreement shall be arbitrated, rather, the clause specifically states that if the submitted material is used, the reasonable value of the material will be paid to the Plaintiffs, however, if the parties "are unable to agree as to the reasonable value, the amount will be conclusively determined by a panel of three arbitrators...."[3] Submission Agreements at ¶ 4. As this is a narrow arbitration clause, it is "'proper to consider whether the conduct in issue is on its face within the purview of the clause.'" *Prudential, supra,* at 64 (quoting *McAllister Brothers, Inc. v. A & S Transportation Co.,* 621 F.2d 519, 522 (2d Cir.1980)).

The arbitration clause is conditioned upon the "use of the material submitted" to Anthony Yerkovich Productions or any person or company associated with or in contract with Anthony Yerkovich Productions; neither Anthony Yerkovich Productions nor the Defendants in this action have admitted use of the Plaintiffs' screenplays, *see, e.g.,* Defendants' Reply Memorandum, filed December 12, 1995, Exhibit B; Affidavit of Jeremiah J. McCarthy, filed June 20, 1995, Exhibit H, thus the arbitration clause of the Submission Agreements does not apply to the Plaintiffs' claims of copyright infringement asserted in this case,[4] and cannot reasonably be construed to apply to this copyright infringement action.

Defendants contend that the phrase in the fourth full paragraph of the Submission Agreements "[y]ou agree that if you use the material submitted by me and provided such material is novel ..., and has not been obtained by you from another source" means that the arbitration clause applies even if there is a dispute as to whether Defendants in fact used, *i.e.* copied, the Plaintiffs' material. However, the language of that paragraph does not support Defendants' interpretation. The paragraph says simply that in order for Plaintiffs to be entitled to compensation there must be a use of the material. If the Plaintiffs' material as defined by the agreement—theme, plot, idea, format, etc.—*see* Submission Agreements at ¶ 2, were used by Defendants but such material was asserted by Defendants as having been created by someone else, Plaintiffs would not be entitled to compensation and the arbitration clauses would not apply. Thus, the agreement to arbitrate covers only the question of the value of the material as used by Defendants if there was either an agreed to use or an unagreed to use acknowledged by the Defendants.

This interpretation is consistent with the purposes of the agreement. The terms of the form agreement contemplate an amicable and cooperative relationship between the submitting party and the reviewing party, and protect the reviewing party against unlimited financial expense should there be a dispute as to the value of the material as used by the reviewing party. To take advantage of the arbitration provision the reviewing party need only agree that the material submitted was used in some form, not necessarily even a form that would constitute a copyright violation as the definition in the Submission Agreement of material includes the potential use of uncopyrightable "ideas." Submission Agreements at ¶ 3. Thus, where the reviewer insists it has not used the submitted material it places the question of its obligation to the submitting party outside the purview of the agreement leaving both parties to their rights and remedies under federal copyright law on the questions of any

**3.** The Submission Agreements further provide that the Plaintiffs' "sole right and remedy with regard to any unauthorized use [of their screenplays] ... shall be to submit the question of the value of the material appropriated without my consent to arbitration as aforesaid...." Submission Agreements at ¶ 7.

**4.** The court notes that although the Defendants previously claimed that no relationship existed between either Mr. Yerkovich or Mr. Marcus, an agent of Yerkovich's, and the Defendants, *see* Defendants' Memorandum of Law in Support of Motion for Summary Judgment, filed March 22, 1994, pp. 28–29, Defendants now claim that, for purposes of the Submission Agreements, Imagine Films, MCA and Universal are related to Anthony Yerkovich Productions. Defendants' Memorandum of Law in Support of Motion for Leave to Amend, filed June 23, 1995, pp. 8–9.

alleged infringement of submitted material, and their entitlement to copyright protection, and related damages.

Because "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit,'" *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 27 (2d Cir.1995) (quoting *Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601, 604 (2d Cir.1991), *cert. denied*, 504 U.S. 930, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992)), Plaintiffs' claims as alleged in this suit fall outside the scope of the arbitration clause in the Submission Agreements.[5] Based upon the terms of the Submission Agreements, the court finds with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Leadertex, supra*, at 27.

However, even assuming that the Submission Agreements and the arbitration clause contained within them applied to this copyright infringement action, Defendants have waived the affirmative defenses they now seek to add to their answers, and the Plaintiffs would be prejudiced by Defendants' late interposition of the Submission Agreements if they were permitted to form the basis of new defenses.

▆ Rule 8(c) of the Federal Rules of Civil Procedure requires a party to affirmatively plead certain specified defenses, as well as "any other matter constituting an avoidance or affirmative defense." Affirmative defenses under Rule 8(c) must be pled in the answer to give notice of the defense to the opposing party, and allow them to develop evidence and offer arguments to controvert the defense. *Knapp Shoes, Inc. v. Sylvania Shoe Manufacturing Corporation*, 15 F.3d 1222, 1226 (1st Cir.1994) (citing *Blonder-*

*Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971)). "'The right to arbitration, like any other contract right, can. be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right.'" *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir.1995) (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C.Cir.1966) (per curiam)). *See also Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985) (citing *Sweater Bee By Banff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457, 461 (2d Cir.), *cert. denied*, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985)) (the litigation of substantial issues going to the merits of the suit may constitute a waiver of arbitration). The question of whether a party's pretrial conduct amounts to waiver of the defense of arbitration is a legal question to be decided by the court. *Leadertex, supra*, at 26; *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985).

In determining whether a party to an arbitration agreement has waived its right to arbitrate, federal courts have looked to whether the party has participated in the lawsuit or taken other action inconsistent with the right to arbitrate, whether the parties are well into preparation of a lawsuit by the time the intention to arbitrate was communicated, whether discovery procedures were utilized, and whether the other party was affected or prejudiced by the delay in asserting the right to arbitrate. *Leadertex, supra*, at 26; *Jones Motor Company, Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 633*, 671 F.2d 38, 44 (1st Cir.) (Breger, J.), *cert. denied*, 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1982) (citing *Reid*

---

5. Defendants also seek to invoke the "independent" defenses under the Submission Agreements including a statute of limitations defense. Defendants' Reply Memorandum, filed December 12, 1995, at pp. 21–23. Defendants argue that the six month limitation bars the instant judicial action. Defendants' Reply Memorandum, filed December 12, 1995, at p. 22. If this assertion is true, then the Submission Agreements contemplate a judicial proceeding as well as arbitration and arbitration is not the exclusive remedy under the Submission Agreements. Thus, if the Defen-

dants' interpretation of the scope of the arbitration clause in the Submission Agreements were adopted, arbitration could not be compelled as, according to Defendants' interpretation of the six-month limitation provision, Plaintiffs had the option to proceed to litigate their claims of copyright infringement in this court. However, a more natural reading of the provision in the context of the entire agreement indicates that it was intended solely to govern arbitration claims filed under the terms of the agreement.

*Burton Construction, Inc. v. Carpenters District Council,* 614 F.2d 698, 702 (10th Cir. 1980) (citations omitted)). "Sufficient prejudice to infer waiver has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." *Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993) (citations omitted).

█ In this case, Defendants have repeatedly invoked and submitted to the jurisdiction and procedures of the court for nearly four years by moving to bifurcate and filing for protective orders and to stay discovery, all of which were denied, by moving to compel disclosure of discovery documents and for sanctions, as well as filing motions for summary judgment and requesting oral argument on these motions before asserting this motion to amend Defendants' answers.

Moreover, this court has ordered sanctions against Defendants pursuant to Fed.R.Civ.P. 37 based upon a failure to comply with discovery orders of the court. Decision and Order, filed December 21, 1994. Thus, "[t]o permit litigants to exercise their contractual rights to arbitrate at . . . a late date, after they have deliberately chosen to participate in costly and extended litigation would defeat the purpose of arbitration: that disputes be resolved with dispatch and with a minimum of expense." *Com–Tech Associates v. Computer Associates Intern.,* 938 F.2d 1574, 1578 (2d Cir.1991).

█ The court also has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the opposing party. *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990) (court denied motion to amend filed seventeen months after suit initiated and one month after responses to motion for summary judgment were filed when the only excuse offered for delay was that counsel was unaware of a particular section of law). *See Sanders v. Thrall Car Mfg. Co.,* 582 F.Supp. 945, 952 (S.D.N.Y.1983), *aff'd,* 730 F.2d 910 (2d Cir. 1984) (the burden is on the party who wishes to amend to provide a satisfactory explanation for the delay). *See, e.g., Hanlin v. Mitchelson,* 794 F.2d 834, 841 (2d Cir.1986) (where party did not know of confirmation deadline because counsel failed to tell her, court held that "amendments seeking to insert or correct matters about which parties should have known but did not know are plainly within the scope of Rule 15(a)"); *Tokyo Boeki (U.S.A.), Inc. v. SS Navarino,* 324 F.Supp. 361, 367 (S.D.N.Y.1971) (amendment to answer allowed where the existence of a note was unknown to defendant until a deposition took place, the failure to plead the defense at an earlier time was justified and the plaintiff suffered no prejudice); *Green v. Wolf Corporation,* 50 F.R.D. 220 (S.D.N.Y. 1970) (court allowed amended complaint four years after suit was filed and a lengthy court of appeals decision was issued, despite the fact that plaintiff knew all information from the beginning and the only excuse provided was that securities law is complex).

█ In this case, Defendants claim that the Submission Agreements are "newly discovered documents" which surfaced after the deposition of Anthony Yerkovich, on April 1, 1995, and were wrongfully withheld from discovery.[6] Defendants' Memorandum of Law, filed June 23, 1995, p. 7. Defendants argue

---

**6.** The court has reviewed Defendants' Document Demand No. 4, dated October 18, 1993, requesting all documents "concerning the sale by plaintiffs of their rights to either of the screenplays entitled 'Down to Gehenna' and 'Baptism of Fire.'" Affidavit of Linda H. Joseph, filed June 12, 1995, at ¶ 11. The term sale was not defined by the demand. However, the Submission Agreements do not discuss directly or indirectly the sale of the screenplays, rather, they are contracts which require Anthony Yerkovich Produc-

tions to read the materials submitted and pay a reasonable fee in the event of their use. There is an absence of any suggestion that any assignment of all copyright interests Plaintiffs have in the screenplays is to take place, a standard provision typical in the transfer of ownership of copyrighted works. *See* Submission Agreements. Thus, the Submission Agreements, being plainly outside the meaning of Defendants' discovery demand, were not wrongfully withheld by Plaintiffs in response to Defendants' Document Demand No. 4.

that based on these "newly discovered" Submission Agreements, they should be allowed to amend their Answers to assert additional affirmative defenses. However, Karen T. Green, the former vice president of legal affairs of Imagine Films, sent the Submission Agreements to defense counsel at Jaeckle, Fleischmann & Mugel on July 2, 1992. Affidavit of Karen T. Green, filed December 12, 1995, at ¶¶ 1, 4; Affidavit of Linda H. Joseph, filed October 25, 1995, at ¶ 18 n. 1. Therefore, Defendant Imagine Films and defense counsel have been in possession of the Submission Agreements since before they filed their answer to the original complaint in July of 1992.

Defendants cite several cases in support of granting their motion for leave to amend their answers based on circumstances they allege are similar to their own, however, each of these cases is distinguishable as the opposing party failed to demonstrate that it would be prejudiced by the amendment. *Intersource, Inc. v. Kidder Peabody & Co.,* 1992 WL 369918, *3–*4, 1992 U.S.Dist. LEXIS 17740, *8–*10 (S.D.N.Y.1992) (leave to amend the answer was granted where the defendant became aware of the facts triggering the fraudulent inducement and mistake defenses during discovery and the Plaintiff was unable to demonstrate evidence of bad faith or dilatory motive which resulted in undue prejudice justifying a denial of leave to amend); *Poletis v. City of Prairie Village,* 1988 WL 524436, *1, 1988 U.S.Dist. LEXIS 13607, *2–*3 (D.Kan.1988) (leave to file an amended answer to assert affirmative defenses of waiver, estoppel, and accord and satisfaction granted where defendants stated that they recently discovered a settlement agreement between plaintiff and defendant which was in defense counsel's custody for approximately two years; the court had no additional information regarding defense counsel's knowledge of the document's existence, the plaintiff bore some responsibility for the late discovery of the agreement, as plaintiff was required to produce "any and all relevant documents," and the court found no evidence indicating that allowing defendants to amend their answer would prejudice the plaintiff, thus the court allowed the amendment); *Consolidated Rail Corporation v. Amlon Metals, Inc.,* 1988 WL 7804, *1, 1988 U.S.Dist. LEXIS 512, *2 (S.D.N.Y.1988) (leave to amend the answer granted where the defendant learned, through discovery, that the shipper of the materials in question was not the defendant, and the plaintiff provided no reason why leave to amend the answer should be denied); *Woldow v. Edgemoor Realty Co.,* 81 F.Supp. 800, 802 (D.Del.1949) (leave to amend granted where new facts became known to the defendants after a deposition was taken and the plaintiffs did not demonstrate that they would be prejudiced by the amendment).

Defendants also argue that *Baxter International Inc. v. Cobe Laboratories, Inc.,* 1991 WL 280054, 1991 U.S.Dist. LEXIS 19637 (N.D.Ill.1991), supports their position. In *Baxter,* leave to amend defendant's answer was granted where new facts were discovered through depositions and document requests. *Id.* at *2, 1991 U.S.Dist. LEXIS 19637 at *5. The court indicated that defendant's delay in bringing its counterclaim was excusable as defendant waited until it had sufficient information to support the allegation, and the amendment would not cause undue delay as discovery was ongoing, there was a substantial overlap in proof between the antitrust counterclaim and one of defendant's original defenses, and no trial date had been set. *Id.* at *3, 1991 U.S.Dist. LEXIS 19637 at *7. On cursory examination, this case appears to resemble the case at bar, however, in the case before this court, the new facts which Defendants assert they recently discovered have been in Defense counsel's possession since July of 1992.[7] Thus, as Defendants have had the information upon which they seek to amend their answers for a long period of time, and Defendants not provided a sufficient reason to excuse their oversight, this case is indisputably distinguishable from *Baxter, supra.*

█ The Submission Agreements were admittedly in possession of at least one of the

---

7. It is also of significance that Defendants Imagine Films and Universal were alerted to the existence of the Submission Agreements as they were specifically mentioned in two letters sent to Mr. Yerkovich on July 16, 1991 and September 3, 1991, with copies to these Defendants.

Defendants and defense counsel, who preceded Ms. Joseph as counsel for Defendants in her firm, since July 2, 1992. Thus, an oversight within defense counsels' law office as to their possession of the Submission Agreements or an earlier determination by prior counsel that the agreements were irrelevant to this case, are the only plausible reasons to explain why Ms. Joseph as successor counsel was unaware of the Submission Agreements when she entered the case in 1994, or why any predecessor defense attorney did not choose to raise the matter on a more timely basis.[8] Either is an insufficient reason to excuse a four year delay in asserting any new affirmative defenses based on these agreements. *See Veal v. Geraci,* 23 F.3d 722, 725 (2d Cir.1994) (the relationship between an attorney and the client he or she represents in a lawsuit is one of agent and principal, thus the client "has notice of a fact if his agent has knowledge of the fact, reason to know it or *should* know it. . . .") (citing Restatement (Second) of Agency § 9(3) (1958)); *Price v. Concourse Super Service Station, Inc.,* 32 Misc.2d 349, 223 N.Y.S.2d 958, 965 (Sup.Ct.Nassau Cty.1961) ("The plaintiffs seek to explain this delay by evidence that their attorney and agent did not read the instrument he concededly received. But if he did not read it when he received it, he and his clients are nonetheless chargeable with knowledge of its contents as of the date of receipt."). *See also Celestine v. Veteran's Administration Hospital,* 746 F.2d 1360, 1362 (8th Cir.1984) ("It is fair to assume, in most contexts, that lawyers know what their clients know. . . ."); *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666 (2d Cir.1980) (petitioner cannot avoid the consequences of the acts or omissions of his chosen representative, absent a truly extraordinary situation, as "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party . . . is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" (quoting

*Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1980)); *New York State Energy Research & Development Authority v. Nuclear Fuel Services, Inc.,* 714 F.Supp. 71, 73 (W.D.N.Y.1989) ("a 'client is not excused from the consequences of his attorney's nonfeasance.' The client must be, consistent with our system of representative litigation, charged with notice of all facts within the possession of his attorney. It follows that 'principal counsel' is chargeable with the knowledge of local counsel, because the latter especially is true of the former.") (quoting *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666 (2d Cir.1980)).

Further, this is not a situation in which the attorney obtained a document which was unknown to the client. Defense counsel received the Submission Agreements from Imagine's vice-president for legal affairs, Affidavit of Karen T. Green, filed December 12, 1995, at ¶¶ 1, 2, 4, and Universal received a copy of the original letter of Plaintiffs' attorney sent to Anthony Yerkovich Productions, dated July 16, 1991, which briefly discussed the Submission Agreements. Defendants' Reply Memorandum, filed December 12, 1995, Exhibit A ("Consonant with your agreement to review the works, [Plaintiffs] evidently executed and delivered to your representative a 'letter agreement' apparently and allegedly providing for certain remedies in the event portions of the works . . . were misappropriated or misused. . . ."). Universal also received a copy of the September 3, 1991 letter to Anthony Yerkovich indicating that Plaintiffs "were extremely concerned about the document signed by them at [Yerkovich's] behest limiting liability and placing numerous restrictions upon remedies for any misappropriation of [Plaintiffs'] work." Defendants' Motion to Dismiss and/or Stay, filed October 25, 1995, Affidavit of Linda H. Joseph, Exhibit D.

 As Defendants' delay in seeking arbitration after approximately four years of

---

**8.** It is extremely difficult for this court to believe that experienced attorneys would twice neglect, in preparing to file Defendants' answers to the complaint, filed July 10, 1992, and their answers to the amended complaint, filed November 2 and 17, 1992, to assert defenses potentially providing early and dispositive resolution to Plaintiffs'

claims. The more reasonable conclusion and the one consistent with this court's own interpretation of the Submission Agreements, is that prior counsel determined that the agreements were inapplicable. The court also notes that Defendants have declined to submit explanatory affidavits from prior defense counsel.

pretrial proceedings in itself is an insufficient reason to deny Defendants' motion for leave to amend their Answers, the Plaintiffs must also demonstrate prejudice. *Com–Tech Associates v. Computer Associates International, Inc.*, 938 F.2d 1574, 1576 (2d Cir.1991) (mere delay in seeking arbitration, absent prejudice to the opposing party, does not constitute waiver); *Rush, supra*, at 887 (seeking arbitration after eight months of pretrial proceedings is insufficient in itself to constitute waiver of the right to arbitrate, prejudice must also be established). "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense. *Leadertex, supra*, at 26 (pretrial expense and delay without more do not constitute prejudice sufficient to support a finding of waiver) (citing *Rush, supra*, at 887–88); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir.1991). Whether this second type of prejudice exists is determined by "examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances." *Kramer, supra*, at 179. Further, prejudice has been found "where a party has caused substantial expense and loss of time by continuing litigation instead of demanding arbitration. . . ." *Rush, supra*, at 888.

In the instant case, nearly four years passed between the time that . Plaintiffs brought suit and Defendants raised the arbitration clause in the Submission Agreements as a bar. During this period of time, the parties engaged in extensive pretrial litigation, including several motions to resolve discovery disputes, to bifurcate the proceedings or stay discovery, for sanctions and motions for summary judgment. Prior to Defendants' instant motion, the docket entries in this action started at 134.

Plaintiffs will suffer economic and substantive prejudice by Defendants' delay in seeking arbitration. Defendants have already been sanctioned by this court, and now face the possibility of a further sanction. Defendants should not be able to avoid the effects of the sanction already imposed, nor should they be able to avoid any future sanctions by resorting to arbitration. *See Kramer, supra*, at 179 (by engaging in such aggressive, protracted litigation for over a four year period, Kramer waived his contractual right to arbitration; allowing arbitration at this late date would severely prejudice the plaintiff, who has expended a great deal of time and money contesting Kramer's motions and appeals); *Com–Tech, supra*, at 1577 (shortly before the scheduled completion of all discovery, defendants first raised the issue of arbitration, along with motion for judgment on the pleadings and partial summary judgment; these maneuvers put plaintiffs to considerable additional expense).

In demonstrating procedural prejudice, Plaintiffs assert that Defendants have engaged in substantial discovery, including filing a motion to compel, a motion for a protective order, a motion to bifurcate the trial and stay damage-related discovery, a motion to strike Plaintiffs' amended complaint as a sanction for failure to comply with discovery. On March 22, 1994, Defendants filed their first motion for summary judgment, and on May 23, 1994, they moved for a stay of discovery pending determination on their summary judgment motion. On April 5, 1995, Defendants filed a second motion for summary judgment.

Ms. Joseph claims that she discovered the Submission Agreements on April 12, 1995, and subsequently forwarded them to the Defendants. Affidavit of Linda H. Joseph, filed October 25, 1995, at ¶ 18. For two months, Ms. Joseph continued to progress with the litigation without giving any indication that either she or her clients believed the Submission Agreements were applicable to this suit. On April 20, 1995, Ms. Joseph filed an affidavit in support of reconsideration of this court's earlier sanctions decision, in which she expressly referred to the Submission Agreements but did not suggest that they were applicable to the Defendants. Affidavit of Linda H. Joseph, filed April 21, 1995, at ¶ 10. On May 19, 1995, Ms. Joseph filed a

Reply Declaration, Objections to Plaintiffs' Affidavits and Exhibits, a Declaration of Gordon Grayson, and a Reply Memorandum of Law, all in support of Defendants' motion for summary judgment, filed April 5, 1995. Ms. Joseph requested Judge Skretny, by motion filed on June 2, 1995, to schedule oral argument on Defendants' motions for summary judgment, which was previously adjourned pending this court's decision on Defendants' request for reconsideration of its Decision and Order, filed December 21, 1994.

Subsequent to the Plaintiffs' filing of their motion for sanctions on June 5, 1995, Defendants suggested that the Submission Agreements were applicable to this action. On June 12, 1995, Ms. Joseph filed an affidavit asserting the right to arbitrate this dispute. Defendants then received notice that oral argument on their summary judgment motion was scheduled for August 2, 1995, at which time they requested a conference with Judge Skretny to remove the summary judgment arguments from the calendar and set a briefing schedule to pursue their rights under the Submission Agreements. Affidavit of Linda H. Joseph, filed October 25, 1995, at ¶ 20.

On August 2, 1995, Ms. Joseph told Judge Skretny that "in the intervening period" since June 2, 1995, Ms. Joseph learned of the Submission Agreements which gave her clients the right to arbitrate this dispute. Affidavit of Jeremiah J. McCarthy, dated October 27, 1995, Exhibit B, pp. 4–5. If the Defendants believed that the Submission Agreements' arbitration clause was applicable, they would not have requested oral argument on the summary judgment motions on June 2, 1995, as Defendants would have wanted "to move very, very cautiously and not to waive any of the rights that [Defendants] have to arbitrate." Affidavit of Jeremiah J. McCarthy, dated October 27, 1995, Exhibit B, pp. 4–5.

Plaintiffs point out that there have also been several motions addressing the merits of this case. For example, Defendants used the results of their pretrial discovery to support their motions for summary judgment, which Plaintiffs were required to respond to, Defendants moved to strike Plaintiffs'

amended complaint, on October 20, 1993, for alleged discovery abuse, and Plaintiffs were required to respond, finally, Defendants have vigorously contested the Decision and Order, filed December 21, 1994, which resolved the issue of access in favor of Plaintiffs as a discovery sanction. In seeking reconsideration of that order, Defendants argued that "this determination with respect to access is no different in terms of effect from a grant of partial summary judgment in favor of plaintiffs on the access issue." Affidavit of Linda H. Joseph, filed December 29, 1994, at ¶ 4. *See Cotton v. Slone,* 4 F.3d 176, 180 (2d Cir.1993) (court held that the right to arbitrate was waived where defendant repeatedly invoked power of the court in resisting discovery by seeking extensions of time, revisions of the discovery schedule, and sought two protective orders which were denied). Further, both Plaintiffs and Defendants have incurred substantial expenses with respect to the litigation. Thus, to permit Defendants to halt the case at this point and divert it into arbitration contravenes the statutory purposes of arbitration, that disputes be resolved without the delay and expense of litigation. *Com–Tech, supra,* at 1577; *Ansam Assoc., Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir.1985) (affirming denial of proposed amendments where discovery was closed and defendant had filed a motion for summary judgment).

Defendants' conduct has imposed unnecessary expense and delay on Plaintiffs, which would be compounded if Plaintiffs were now required to arbitrate their claim. Further, Defendants have secured for themselves the benefits of pretrial discovery which are often unavailable in an arbitral forum. Moreover, to require that parties go to arbitration despite their having advanced so far in court proceedings before seeking arbitration would "be unfair, for it would effectively allow a party sensing an adverse court decision a second chance in another forum." *Jones Motor Company, supra,* at 43 (finding a waiver of arbitration where party requested court to render summary judgment). "[I]t is important that judges remain free to control the course of proceedings before them and to correct any abuse of those proceedings by,

for example, denying a belated motion for arbitration." *Jones Motor Company, supra,* at 43.

Additionally, Defendants have asserted other affirmative defenses based on the Submission Agreements, including statute of limitations, contractual limitation on damages, failure to state a claim (also based on the withholding of the Burns Diary), release or waiver, reliance on prior works not disclosed, and unclean hands, as affirmative defenses to be added to their Answers. However, a "party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." *McDonnell v. Dean Witter Reynolds, Inc.,* 620 F.Supp. 152, 155 (D.Conn.1985). *See Knapp Shoes, Inc. v. Sylvania Shoe Manufacturing Corporation,* 15 F.3d 1222, 1226 (1st Cir.1994) (a statutory provision limiting damages to a fixed sum constitutes an affirmative defense for purposes of Rule 8(c)) (citing *Jakobsen v. Massachusetts Port Authority,* 520 F.2d 810, 813 (1st Cir.1975)); *Federal Insurance Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir.1987) (defendant who possessed documents at the time suit was filed and could have discovered and asserted a statute of limitations defense failed to assert the defense until four years after the complaint was served caused unreasonable delay and allowing the amendment would result in undue prejudice to the plaintiff). Thus, based upon the substantial prejudice to Plaintiffs if required to now litigate these new issues, the affirmative defenses which Defendants seek to add based on the Submission Agreements have been waived, and Defendants' motion to amend their Answers based on the Submission Agreements is DENIED.

Defendants also request that, based on the Burns Document, they be allowed to amend their Answers to include an affirmative defense alleging that any of Plaintiffs' infringement claims based upon events arising out of real life experiences must be barred, Defendants' Memorandum of Law, filed June 23, 1995, at pp. 12–13, as both historical and biographical or autobiographical facts cannot be claimed as copyright. *See Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980); 1 Nimmer on Copyright, § 2.11. *Compare Arica Institute v. Palmer,* 970 F.2d 1067, 1075 (2d Cir.1992) ("an original expression is copyrightable, even where the facts themselves are not").

As the Burns Document should have been produced in March of 1995, when it was first found, *see* Decision and Order, filed February 16, 1996, Discussion Section 2(d), this court finds that Defendants should be allowed to assert an affirmative defense based on the Burns Document. Therefore, Defendants motion to amend their answers by adding an affirmative defense with respect to the Burns Document is GRANTED.

Finally, Defendants seek to clarify the language in their answers' demands for attorney's fees pursuant to 17 U.S.C. § 505. Section 505 allows a court, in its discretion, to award the prevailing party in a copyright infringement action reasonable attorney's fees as part of costs. 17 U.S.C. § 505; *Fogerty v. Fantasy,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). In light of the fact that attorney's fees may be awarded as part of the costs of this suit and Plaintiffs will suffer no apparent prejudice from this clarification of Defendants' demand for relief, the Defendants' request to clarify the answers in this respect is GRANTED.

### CONCLUSION

Based on the foregoing discussion, Defendants' motion for leave to amend their answers is DENIED in part and GRANTED in part.

SO ORDERED.